Frank SABOLSKY, et al.

v.

Michael BUDZANOSKI, et al.

Appeal of Louis A. ANTAL et al.
No. 71–1083.

United States Court of Appeals,
Third Circuit.

Argued Jan. 18, 1972.

Decided March 27, 1972.

Joseph A. Yablonski, Washington, D. C., for appellants.

Lloyd F. Engle, Jr., Kuhn, Engle & Blair, Pittsburgh, Pa., for appellees.

Before ADAMS and JAMES ROSEN, Circuit Judges, and STAPLETON, District Judge.

## OPINION OF THE COURT

JAMES ROSEN, *Circuit Judge.*

This appeal requires review of the district court's order dismissing the plaintiff's complaint for lack of jurisdiction.

The plaintiffs are over 100 coal miners, suing individually and as representatives of all members of the United Mine Workers of America (UMWA), District No. 5. Named as defendants in the complaint filed on August 21, 1970 were the District President, Michael Budzanoski, District Secretary-Treasurer John Seddon, members of the District 5 Executive Board, Roland Nuccetelli, Frances McCallister, Albert Vilcoss, District Local

5, the International Union and thirty-seven local unions.

The gravamen of plaintiff's complaint is that both the International and District Constitutions require the disbanding of any local union with less than 10 working members;[1] that the officers of District No. 5 and the International have persisted in disregarding the requirement to disband a number of Unions (37) with less than 10 working members; that the maintenance of these locals "serves to perpetuate the political control of the incumbent UMWA officials"; and that union funds are being expended in connection with the maintenance of these non-functioning local unions. This conduct is claimed to be in clear violation of the fiduciary duty embodied in Section 501 of the Labor Management Reporting & Disclosure Act[2] ("LMRDA") which declares that union officials "occupy positions of trust in relation to" the union and its members, and requires union officers to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and by-laws. The complaint further alleges that requests by plaintiffs seeking compliance with the pertinent constitutional provisions have been met with dilatory and equivocal responses by the International and District officers.

In addition to Section 501 of the LMRDA, *supra*, jurisdiction was alleged to exist under § 101 of the LMRDA (29 U.S.C. § 411); § 301 of the National Labor Relations Act of 1947 (29 U.S.C. § 185), and 28 U.S.C.A. § 1331. The district judge considered the primary aim of plaintiff's suit is "to compel the District 5 officers to comply with alleged requirements of the Constitution of the UMWA, International Union and the District 5 UMWA Union."[3] Because of the number of plaintiffs and the different types of defendants involved in this suit, the court noted its difficulty in finding "the specific jurisdictional grounds which connects any individual plaintiff with

1. Article XIV of the UMWA International Constitution provides:

"Section 1. Local Unions shall be composed of 10 or more workers, skilled or unskilled, working in or around coal mines, coal washeries, coal processing plants, coke ovens, or in other industries designated and approved by the International Executive Board. . . ."

"Section 21. If any mine or colliery is permanently abandoned, or should any Local Union for any cause disband, or should its charter be revoked, the charter and all monies, supplies and property, including real estate belonging thereto, shall be taken over by the International Union; provided, that any remaining members of such Local Union in good standing shall be given transfer cards."

Section 19 of this same Article establishes the 'procedure to be followed in disbanding local unions:

"When a mine is abandoned indefinitely and all the members of the Local Union having jurisdiction over it have gone to work elsewhere, the Local Recording Secretary must notify the District Secretary of the fact, and the District Secretary must collect the charter, seal, monies, books, supplies, property, including real estate, belonging thereto and notify the International Secretary-Treasurer."

Article XIII, Section 1 of 1966–1970 District 5 Constitution provides that:

"Local Unions shall be composed of ten or more workmen, skilled or unskilled, working in and around coal mines . . ."; and "When a mine is abandoned indefinitely and all the members of the Local having jurisdiction over it have gone to work elsewhere, the Local Recording Secretary must notify the District Secretary of the fact, and the District Secretary must collect the charter, seal, monies, books, supplies, property, including real estate, belonging thereto, and notify the International Secretary-Treasurer," Section 19.

2. 29 U.S.C. 501(a).

3. "What the plaintiffs seek is declaratory relief with respect to the interpretation of the Constitutions of the labor organizations involved, injunctive relief against the continuance of certain practices alleged to be inconsistent therewith, and monetary damages payable to the defendant Unions as well as the individual plaintiffs, punitive damages, costs and fees." 320 F.Supp. 161, 163 (W.D.Pa. 1970).

any separate defendant under the terms of the statutes which strictly limit the jurisdiction of the United States District Court to rather narrow and rather specifically confined causes of action, some of which contain specific procedural prerequisites."

■ Because the district court disposed of the matter on a motion to dismiss, we take the plaintiffs' allegations as true for the purpose of this appeal. Kahan v. Rosenstiel, 424 F.2d 161 (3d Cir. 1970), cert. denied 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970); Frank Mashuda Co. v. Allegheny County, 256 F.2d 241, 242 (3d Cir. 1958), aff'd, 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). We conclude that the district court erred in finding a lack of jurisdiction under the section 501 claim, and confine ourselves to a statement of the principles relevant thereto,[4] which are set forth seriatum:

■ (1) The District Judge held that Section 501(b) of the LMRDA permits suits against " * * * any officer, agent, shop steward, or representative of any labor organization," and that the many local unions, District No. 5 UMWA and the UMWA International Union may not properly be joined in this suit. Misjoinder or non-joinder of parties is not ground for dismissal. F.R. Civ.P. rule 21, 28 U.S.C.A. The proper remedy in case of misjoinder is to grant severance or dismissal to the improper party if it will not prejudice any substantial right. The complaint was properly

dismissed as to the UMWA International Union and District Union No. 5. Aho v. Bintz, 290 F.Supp. 577 (D.Minn.1968).[5] However, the order of dismissal should not have been granted to the District 5 officers, who clearly fall within the statutory definition of the LMRDA.[6] (2) The district court further found that the procedural requirements [7] of Section 501(b) of Title 29 require strict compliance, and plaintiff's failure to observe these requirements mandated dismissal.

■ No formal hearing was held in the district court on defendant's motion to dismiss and plaintiff's motion for preliminary injunction. The motions were decided on briefs. It appears from the record that the failure of plaintiffs to apply for leave of court to file this suit was raised for the first time in the district court's opinion. The court did not make a specific finding that good cause had not been shown. It noted in passing that one factor in the showing of good cause requirement "can be the extent to which plaintiffs have utilized or exhausted their internal union remedies."

The complaint in this case was verified by over 100 plaintiffs. Section 501(b) specifically allows an "ex parte" grant of leave to proceed. The appellants contend that by filing the complaint they, in effect, made an ex parte application to the court. It has been held that a lack of formality in observing the procedures of Section 501(b) will not bar a court from granting leave, where appropriate. Executive Board, Local Union No. 28 v.

4. We need not reach appellants' jurisdictional claims alleged under 29 U.S.C. § 185 and § 411. The District Court has subject matter jurisdiction. The trial court will have an opportunity to determine whether plaintiffs have a claim under Section 101 of the LMRDA as the facts are more fully developed.

5. Cf. Woody v. Sterling Aluminum Products, Inc., 244 F.Supp. 84 (E.D.Mo.1965), aff'd 365 F.2d 448 (8 Cir. 1966), cert. denied, 386 U.S. 957, 87 S.Ct. 1026, 18 L.Ed.2d 105 (1967).

6. 29 U.S.C. Sec. 402. Definitions:
"(q) 'Officer, agent, shop steward, or other representative,' when used

with respect to a labor organization, includes elected officials and key administrative personnel, whether elected or appointed (such as business agents, heads of departments or major units, and organizers who exercise substantial independent authority), but does not include salaried nonsupervisory professional staff, stenographic, and service personnel."

7. Sec. 501(b) provides that no such proceeding shall be brought "except upon leave of the court obtained upon verified application and for good cause shown * * *."

I.B.E.W., 184 F.Supp. 649 (D.Md.1960). As the court said in Horner v. Ferron, 362 F.2d 224 (9th Cir. 1966), "[t]he allegations of the verified complaint may be sufficient to enable the court to determine whether there is 'good cause.'" Accordingly, the case will be remanded to the district court with directions to grant leave, nunc pro tunc, to file the complaint.

▆▆▆ (3) The district court found that the complaint does not contain allegations of failure to hold money or property for the benefit of the organization nor of any expenditure not authorized by the Constitution, by-laws or resolutions, and that section 501(b) remedies are available only as a cause of action dealing with the fiduciary responsibility with respect to the money or property of the union. We read the complaint as setting forth allegations regarding the holding and expenditure of union funds. Moreover we disagree with the court's reading of the scope of Section 501.

Appellees point to the remarks of Senators Ervin and McClellan in Senate debate to support the contention that Section 501 relates solely to matters of money and property. This contention reflects the erroneous equation appellees make of the Senate debate with the legislative history of Section 501. A complete study of that history reveals that Senate Bill 1555 was amended by H.R. 8342 and, as finally enacted, "extends the fiduciary principle to all of the activities of Union Officials and other Union Agents or representatives."[8] In Highway Truck Drivers and Helpers Local 107 v. Cohen, 182 F.Supp. 608 (E.D.Pa.1960), aff'd 284 F.2d 162 (3d Cir. 1960), cert. denied 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744 (1961), the district court observed that the LMRDA was enacted in the wake of Congressional findings of crime and corruption in the labor and management field, 29 U.S.C. § 401(b), and that Section 501 "attempts to define in the broadest terms possible the duty which the new federal law imposes upon a union official." 182 F.Supp. p. 617.

In Johnson v. Nelson, 325 F.2d 646 (8th Cir. 1963), the court made a thorough analysis of the legislative history of the LMRDA, and concluded that Section 501 imposes fiduciary responsibility in its broadest application and is not confined in its scope to union officials only in their handling of money and property affairs. In rejecting the narrow interpretation of Section 501 asserted by the union officers in *Johnson,* the court stated:

"The courts have with consistency refused to accede to the contention that § 501 is designed for the single purpose of establishing responsibility on the part of officers and other representatives in relation to the handling and managing of fiscal matters of the labor organization. Quite to the contrary, indication is clearly present in

---

8. We note that H.Rep.No.741 on H.R. 8342—known as the Elliott Bill—contained fiduciary provisions *identical* with those which became § 501(a) of the Landrum-Griffin Act.

The report in pertinent part provides:

"Union officials occupy positions of trust. They hold property of the union and manage its affairs on behalf of the members. It is the duty of union officers just as it is the duty of all similar trustees to put their obligations to the union and its members ahead of any personal interest.

"We affirm that the committee bill is broader and stronger than the provisions of S. 1555 which relate to fiduciary responsibilities. S. 1555 applied the fiduciary principle to union officials only in their handling of 'money or other property' (see S. 1555, sec. 610), apparently leaving other questions to the common law of the several States. Although the common law covers the matter, we considered it important to write the fiduciary principle explicitly into Federal labor legislation. *Accordingly the committee bill extends the fiduciary principle to all the activities of union officials and other union agents or representatives."* (Emphasis supplied.) United States Code Congressional and Administrative News, 86 Cong. 1 Sess., 1959, Vol. 2, pp. 2479–2480.

the reported cases that § 501 should receive a broad and liberal interpretation and application."

In Moschetta v. Cross, D.D.C., 48 L.R.R.M. 2669 (1961), it was held that the right of the membership to a special convention had accrued and that the failure and refusal of the executive board and of the international officers to complete arrangements for and call a special convention was not authorized by the Union Constitution and constituted a breach of fiduciary duty under Section 501.

In Falcone v. Dantinne, 420 F.2d 1157 (3d Cir. 1969), we drew upon the authoritative interpretation of the intent of Congress expressed in Wirtz v. Hotel, Motel & Club Employees Union, Local 6, 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968) where Justice Brennan speaking for the court highlighted the balance to be struck between the Congressional concern to avoid unnecessary intervention in internal union affairs and the policy expressed in the Act to protect the public interest by assuring that Union elections would be conducted in accordance with democratic principles. While the case deals with a different section of the LMRDA than the instant case, the court's discussion of the purpose of the Act in a case involving the fair election provisions of Title IV is particularly instructive. To the extent that Gurton v. Arons, 339 F.2d 371 (2d Cir. 1964), relied on by the court below *over-emphasizes* the danger of judicial intervention in union affairs, we decline to follow it.[9]

(4) The district court found non-compliance with Section 501(b) in plaintiff's failure to pursue internal remedies before bringing suit. This point requires a brief statement of the events preceding the suit.

In April of 1970, a protest was lodged with the District No. 5 Executive Board charging that certain locals should not be allowed to send delegates to the convention because they were "bogus" locals composed entirely or primarily of pensioned workers rather than the ten or more working miners required by the District and International UMWA Constitutions. No affirmative action was taken. Pellegrini and several other UMWA District 5 members then filed suit in the United States District Court for Western Pennsylvania requesting that delegates from the alleged "ghost" locals be prohibited from being seated at a forthcoming District No. 5 Convention. The complaint was dismissed without prejudice on April 20, 1970. Plaintiffs Louis Antal and John Chach challenged the seating of delegates from these locals at the convention, but no action was taken. Following the convention, counsel for plaintiffs addressed letters to the presidents of both the International and District 5 Unions, requesting the disbanding of the noncomplying locals and the abrogation of certain Convention action in which delegates from these unions had participated.

The district court, in pointing to the letter of request addressed to defendant Budzanowski, noted that it "does not address itself to fiduciary violation under Sec. 501, but rather to the alleged viola-

9. Judge Hastie recognized the careful balance which must be preserved by the courts in cases of this kind in Harris v. International Longshoremen's Association, Local No. 1291, 321 F.2d 801, 805 (3d Cir. 1963). In Lewis v. American Federation of State, County and Municipal Employees, 407 F.2d 1185 (3d Cir. 1969), a case involving union disciplinary proceedings, Judge Aldisert took note of the cautionary language of *Gurton, supra,* counseling against undue judicial intervention, concluding however that "total judicial abstention from the review of union disciplinary proceedings is unacceptable. Such an abdication would be contrary to the clear directive of Congress that rights may not be impaired without strict adherence to procedural and substantive due process, including ultimate redress *to the federal courts;* it would also run counter to the traditional role the judicial branch has fulfilled in protecting the exercise of all legitimate rights." p. 1192.

tion of the International and District 5 Constitution in allowing the alleged illegal unions to continue in existence." 320 F.Supp. at 164. While it may be that no fiduciary violation with respect to specific monies or property is mentioned, we have already established that Section 501 was not intended to be limited to such a narrow construction.

The appellees claim that "the fiscal effect of this alleged misinterpretation is both indirect and miniscule." [10] Cf. Horner v. Ferron, 362 F.2d 224 (9th Cir. 1966), where the rule is stated: "Defenses which necessitate the determination of a genuine issue of material fact, being beyond the scope of a summary judgment procedure, are a fortiori, beyond the scope of a proceeding to determine whether a section 501(b) complaint may be filed." The appellants are not required on a motion to dismiss to prove the fiscal effect of the alleged interpretation of the respective union constitutions. Appellees' contention that the fiscal impact of their activity is minimal places in issue the fact and the degree of fiscal mismanagement. The determination of this issue is properly a matter for an evidentiary hearing. It does not merit consideration as a defense to plaintiffs' complaint in the context of a motion to dismiss.

Appellees argue that the complaint is directed to an alleged misinterpretation of a union constitution. They cite the familiar principle of English v. Cunningham, 108 U.S.App.D.C. 365, 282 F.2d 848 (1960), that courts will accept the correctness of an interpretation fairly placed on union rules by a union's authorized officials. In the absence of any criteria in the record by which a union "interpretation" can be measured, the rule cannot be used to give carte blanche

to union activity which is alleged to constitute a violation of the broad fiduciary duties of union officials under the LMRDA. And courts have not hesitated to strike down so-called "authorized" union conduct, alleged to be based on a rule or by-law fairly interpreted, where such conduct violates the provisions of the Landrum-Griffin Act. Retail Clerks Union, Local 648 v. Retail Clerks International Ass'n, 299 F.Supp. 1012 (D.D.C. 1969); Johnson v. Nelson, supra.[11]

The final jurisdictional issue is whether plaintiffs have requested the governing board or officers of the union to sue and have been refused. "This is akin to the demand required in corporation law before a derivative suit by shareholders will lie. * * * This requisite of the statute also is similar to the rule of exhaustion of internal or administrative remedies which must be done before resort to the courts is sought." Aho v. Bintz, supra. We held in Purcell v. Keane, 406 F.2d 1195 (3rd Cir. 1969) that there is no mandatory exhaustion of internal remedies requirement in suits brought under Section 501 of the LMRDA. We also stated that efforts to invoke internal remedies of the union may affect the "good cause" requirement of Section 501(b) under certain circumstances. A review of plaintiff's efforts in seeking union action before bringing suit does not present a picture of deliberate harassment. Sincere efforts were made by several plaintiffs to obtain compliance by direct impleader. The letter of request addressed to President Budzanowski, although not a request of the officer to sue, did seek internal relief, and in the circumstances then existing, with a District election fast approaching, cannot be deemed insufficient.[12] Compare Aho v. Bintz, su-

10. Appellees brief, p. 14.

11. We note that most of the subject locals involved are not regarded as labor organizations within the meaning of the LMRDA because they contain no working members, and accordingly, the Labor Department exempts the locals from the financial reporting sections of the Act.

12. In Calagaz v. Calhoon, 309 F.2d 248, 260 (5th Cir. 1962), the court stated: "Plaintiffs are not compelled to exhaust the internal remedies of their union when their appeal would have to be made to the very officers against whom their complaint is directed."

*pra,* where the plaintiffs' allegation that they telephoned the International President for relief, which request was denied by return wire, was deemed sufficient. In this case, as in *Purcell, supra,* strict use of any exhaustion requirement would not be warranted. In view of the union officers' alleged "interpretation" of the relevant constitutional provisions, a request to sue would have been an exercise in futility.

Section 501(b) was designed to prevent the filing of harassing and vexatious suits brought without merit or good faith against union officials. Highway Truck Drivers and Helpers Local 107 v. Cohen, *supra,* 182 F.Supp. p. 622, footnote 10. We fail to see how entertainment of the complaint herein will achieve the undesirable end which Section 501(b) was designed to prevent.

The order of dismissal with respect to the District No. 5 President, Secretary and members of the Executive Council is reversed and the cause remanded for further proceedings consistent with this opinion.