**John O'ROURKE, Plaintiff,**

**v.**

**Joseph M. CROSLEY; Thomas Lowry; and Local 30, United Slate, Tile, and Composition Roofers, Damp and Waterproof Workers Association, Defendants.**

**Civ. A. No. 93–1043 (SSB).**

United States District Court,
D. New Jersey.

March 28, 1994.

---

Judith Brown Chomsky, Philadelphia, PA, for plaintiff.

Robert J. Haurin, Richard B. Sigmond, Richard C. McNeill, Jr., Sagot, Jennings & Sigmond, Philadelphia, PA, for defendants.

## OPINION

BROTMAN, Senior District Judge.

Before the court is defendants' motion to dismiss plaintiff's four-count complaint under Fed.R.Civ.P. 12. The motion is premised on two alternative theories: that this court lacks subject matter jurisdiction over the action, Fed.R.Civ.P. 12(b)(1), and that plaintiff fails to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6). As detailed below, the motion is granted in part and denied in part.

## I. Facts and Procedural Background

Plaintiff John O'Rourke, a member of Local 30, United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Association ("Local 30"), brings this action against Local 30 and two of its officers: Joseph M. Crosley, Local 30's business manager, and Thomas Lowry, a Local 30 business agent. The action arises over punitive measures allegedly imposed by Local 30 and its officers against plaintiff. According to plaintiff, because he accepted employment at a construction site where one employer was being picketed—and thus effectively refused to adhere to a sympathy strike imposed by Local 30—he was subjected to threats and intimidation which caused him to resign from his employment. Thereafter, plaintiff allegedly was denied referrals to which he was entitled under Local 30's own rules, which together with the threats and intimidation caused him to resign from the union.

Plaintiff notes in his complaint that Local 30 has a history of violence and intimidation; union officials have been found guilty of numerous racketeering offenses and the union

itself was placed under a Decreeship in 1988. *See National Labor Relations Board v. Local 30, United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association, AFL–CIO v. Schoenberger et al.,* 141 BNA LRRM 2459, 1992 WL 372381 (3d Cir.1992); *U.S. v. Local 30, United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association, et al.,* 686 F.Supp. 1139 (E.D.Pa.1988), *aff'd,* 871 F.2d 401 (3d Cir.1989).

Based on the aforementioned allegations, plaintiff filed the instant action, alleging: (1) racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), (d), and extortion in violation of the Hobbs Act, 18 U.S.C. § 1951 (Count One); (2) breach of fiduciary duty under the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501 (Count Two);[1] (3) common law breach of duty (Count Three); and (4) violation of plaintiff's rights as codified in the Bill of Rights of Members of Labor Organizations, 29 U.S.C. § 411 (Count Four).

## II. Discussion

### A. RICO and Hobbs Act

Plaintiff contends in Count One of his complaint that defendants Crosley and Lowry conducted "the affairs of Local 30 through a pattern of racketeering activities." Defendants argue that Count One of plaintiff's complaint, arising under RICO and the Hobbs Act, is preempted by the National Labor Relations Act ("NLRA") and, alterna-

---

1. Pursuant to 29 U.S.C. § 501(b), plaintiff has filed a separate application before this court seeking leave to file a Section 501 claim, the merits of which will be addressed below.

2. The court in *MHC, Inc. v. International Union, United Mine Workers,* 685 F.Supp. 1370 (E.D.Ky. 1988), well explained the rationale underlying this last exception:

> RICO should be read as limited by the exclusive jurisdiction of the NLRA only when the Court would be forced to determine whether some portion of the defendant's conduct violated labor law before a RICO predicate act would be established. [Citations] So long as the predicate acts exist independent of any unfair labor practice resolutions, the NLRB's exclusive jurisdiction is not violated since the

tively, should be dismissed for failure to state a claim.

### 1. Preemption

█ Defendants contend that the wrongful acts alleged by plaintiff are at most unfair labor practices and as such are preempted by the NLRA. According to defendants, the acts plaintiff relies upon as predicates to his RICO and Hobbs Act claims—namely, the union's refusing to provide plaintiff with job referrals, subjecting him to verbal abuse, and ultimately coercing him to leave the union—constitute alleged violations of certain rights guaranteed under Section 7 of the NLRA. A union's violation of such rights is prohibited under Section 8 of the NLRA as an unfair labor practice, 29 U.S.C. §§ 158(a)(1), (b)(1)(A), and is generally subject to the exclusive jurisdiction of the National Labor Relations Board. 29 U.S.C. § 160; *Sears Roebuck & Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978); *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

█ The defendants concede that there are three types of RICO actions in which NLRB jurisdiction is not exclusive: actions alleging RICO loan violations under 29 U.S.C. § 186, state initiated RICO actions, and RICO actions in which the rule of law sought to be invoked is structured such that enforcement by the courts will not disserve the interest promoted by the labor statutes (i.e. actions in which the nature of the predicate act does not require the expertise of the NLRB and thus can be competently adjudicated by the courts).[2] According to the de-

---

> Court will not be forced to interpret labor law except as a collateral matter. However, if the existence of the predicate acts depends wholly upon a determination that a violation of labor law occurred, jurisdiction is preempted.

*Id.* at 1376–77. A number of courts in this circuit and elsewhere have maintained jurisdiction over labor-related RICO claims on similar grounds. *See United States v. Boffa,* 688 F.2d 919 (3d Cir.1982), *cert. denied,* 460 U.S. 1028, 103 S.Ct. 1280, 75 L.Ed.2d 501 (1983); *United States v. Thordarson,* 646 F.2d 1323 (9th Cir.), *cert. denied,* 454 U.S. 1055, 102 S.Ct. 601, 70 L.Ed.2d 591 (1981); *C & W Constr. Co. v. Brotherhood of Carpenters & Joiners, Local 745,* 687 F.Supp. 1453 (D. Hawaii 1988); *McLendon v. Continental Group, Inc.,* 602 F.Supp. 1492 (D.N.J.1985).

fendants, none of these three exceptions apply in the instant case.

Plaintiff, on the other hand, contends that the third exception above is applicable. He argues that his RICO claim is predicated upon the alleged extortion of rights guaranteed to him under the LMRDA and thus exists independently of NLRA Section 7 violations. To rule on the alleged illegality of the predicate acts, plaintiff argues, the court need only consider the LMRDA and need not interpret the NLRA or make any finding as to the commission of an unfair labor practice.

A recent district court opinion in this circuit supports plaintiff's position. In *Sullivan v. Crosley*, No. 91–3335, 1992 WL 309635, 1992 U.S. Dist. LEXIS 16168 (E.D.Pa. Oct. 20, 1992), the court addressed a virtually identical preemption dispute in a case that happened to involve most of the defendants in the matter currently before this court. In *Sullivan*, like in this case, the union defendants argued that plaintiff's RICO claim was "predicated upon conduct that is wrongful only by virtue of the labor laws and is thus preempted by the exclusive jurisdiction of the NLRA." *Id.*, 1992 WL 309635, at *6, at *20. Plaintiff in *Sullivan* proffered the identical counterargument to that of O'Rourke in the instant case: "that his RICO claim is predicated upon the extortion of protectable property rights, that is, his LMRDA rights in violation of the Hobbs Act ... and therefore cannot be preempted." *Id.* The *Sullivan* court offered the following analysis:

> The Third Circuit has determined that the rights guaranteed under the LMRDA are protectable property interests ... that are extortable in violation of the Hobbs Act. *United States v. Local 560*, 780 F.2d 267, 280–82 (3d Cir.1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986).... The courts have further held that the extortion of one's LMRDA rights satisfies the predicate act requirement of a

RICO claim.... *Local 560*, 780 F.2d at 280–82....

> The defendants have failed to appreciate that the conduct alleged by Sullivan ... could constitute both unfair labor practices prohibited by section 8 of the NLRA, ... and a violation of Sullivan's LMRDA rights. Where the conduct alleged by Sullivan ... falls within the framework of both statutes, Sullivan's claims are not preempted.

*Id.*, 1992 WL 309635, at *7, 1992 U.S. Dist. LEXIS 16168 at *20–21.

The *Sullivan* court's conclusion echoed the Supreme Court's earlier handling of the same issue in *International Brotherhood of Boilermakers, etc. v. Hardeman*, 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971). There the court observed: "[T]he critical question in this action is whether Hardeman was afforded the rights guaranteed him by § 101(a)(5) of the LMRDA.... Since [this] question[ ] [is] irrelevant to the legality of the conduct under the National Labor Relations Act, there is no danger of conflicting interpretations of its provisions." *Id.* at 241, 91 S.Ct. at 615. As the *Sullivan* court noted, "[c]ourts have construed the *Hardeman* holding as standing for the proposition that 'NLRB jurisdiction over an unfair labor practice does not divest the federal courts of jurisdiction to hear an LMRDA claim arising out of the same pattern of misconduct.'" *Sullivan*, 1992 WL 309635, at *7, 1992 U.S. Dist. LEXIS 16168, at *22 (quoting *Quinn v. DiGiulian*, 739 F.2d 637, 643 (D.C.Cir.1984)). On this basis, the *Sullivan* court rejected the contention that the plaintiff's RICO claim was preempted by the NLRA.

The court reaches the same conclusion in this case. While the allegations brought forward by plaintiff can be construed as unfair labor practices in violation of NLRA Section 7, they can also be construed as violations of the LMRDA.[3] Under *Sullivan* and *Hardeman*, this overlap does not necessitate a find-

---

3. As a qualification to this conclusion, the court notes that NLRA preemption is avoided in regard to plaintiff's RICO claim only to the extent that the underlying LMRDA allegations are found to state a claim under Fed.R.Civ.P. 12(b)(6). That is, if the court were to conclude below that plaintiff's LMRDA claim arising under Section

501 must be dismissed for failure to state a claim, the predicate act for RICO purposes would be removed, thus preempting the RICO claim. The court notes that the LMRDA claim arising under Section 411 is irrelevant to this issue since that claim is brought against Local 30 and not Crosley or Lowry.

ing of preemption. Furthermore, under *Sullivan* and *Local 560,* the allegations of LMRDA violations suffice as predicate acts for a claim arising under RICO. Accordingly, the court concludes that plaintiff's RICO claim is not preempted.

**2. Failure to State a Claim under RICO**

Defendants next argue that plaintiff's RICO claim should be dismissed under Fed. R.Civ.P. 12(b)(6) for failure to state a claim. The RICO statute makes it

> unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Additionally, under § 1962(d), it is unlawful for any person to conspire to violate § 1962(c).

Defendants specifically contend that plaintiff's RICO claim fails to adequately plead (1) the existence of "racketeering activity," and, assuming that such activity is shown, (2) the existence of a "pattern." [4] These contentions will be addressed in turn.

**a. "racketeering activity"**

The RICO statute defines a variety of acts as "racketeering activity." Included in that definition are acts of extortion in violation of the Hobbs Act, 18 U.S.C. § 1951, which is what plaintiff alleges occurred in this case. Hobbs Act extortion is defined as

> the obtaining of property from another, with his consent, induced by wrongful use

of actual or threatened force, violence, or fear, or under color of official right.

18 U.S.C. § 1951(b)(2). The Third Circuit has held that the primary elements of a Hobbs Act violation are (1) inducing the victim to part with property, (2) use of fear, and (3) affect on interstate commerce. *Local 560,* 780 F.2d at 281. Defendants argue that the allegations against both Crosley and Lowry fail to establish these elements.

■ In regard to Crosley, defendants contend that plaintiff's complaint merely alleges that Crosley was the Business Manager of Local 30 but fails to allege any extortionate conduct on Crosley's part. A review of plaintiff's amended complaint reveals the following allegations relating to Crosley: [5] that Crosley was the business manager of Local 30 (¶ 5); that, in the fall of 1992, "the hiring hall was operated under the supervision" of Crosley (¶ 10); [6] that Crosley had the power to appoint and remove business agents including defendant Lowry (¶ 11); that for "at least ten years prior to 1992, officers and agents of Local 30, including ... Crosley, used violence, threats of violence and other forms of intimidation to extort [various rights] from members of the union" (¶ 32); that by September 1, 1992, "defendant Crosley was aware that ... defendant Lowry was involved in acts of violence and threats against union members ... but failed to remove him from his position" (¶ 39); and that, through the aforementioned conduct, "officers and agents including [Crosley] created an atmosphere of fear and intimidation among the members, including plaintiff O'Rourke" (¶ 40).

4. While not addressed at great length by defendants, they also challenge the interstate commerce requirement, which is discussed below. The defendants concede that Local 30 is an "enterprise" for RICO purposes.

5. The court chooses to discriminate between actual allegations and mere commentary relating to Crosley. For example, plaintiff claims that a union steward who previously assaulted another union member was thereafter appointed by Crosley to the position of business agent (¶ 38b). This is irrelevant, in the court's view, to the determination of whether plaintiff has stated a claim under RICO against Crosley.

6. While reading this contention broadly, the court does not construe it to suggest that Crosley himself refused to refer plaintiff for work vis a vis the Local 30 hiring hall. Plaintiff in fact assigns blame for this to the union itself (Amended Complaint ¶ 29) and to Lowry (Memorandum In Support Of Plaintiff's Claim Under RICO, at 3–4) but not to Crosley. Regardless, even were Crosley's "supervisory" capacity at the hiring hall sufficient to impose liability on him under the LMRDA, given the absence of any allegation attributing threats or inducement to Crosley, his role at the hiring hall is insufficient to state a claim under the Hobbs Act.

■ Accepting arguendo the truthfulness of these allegations, as is proper in adjudicating a Rule 12(b)(6) motion,[7] the court finds nothing to support the contention that Crosley participated directly or indirectly in any extortionate conduct relating to the rights of plaintiff. Significantly, there is no allegation that Crosley did *anything* to plaintiff, nor that Crosley ordered or otherwise induced any acts committed against plaintiff by others. The allegation that Crosley participated in the creation of "atmosphere of fear and intimidation" felt by plaintiff is, for two reasons, insufficient to state a claim on its own. First, this conclusory allegation derives its substantive meaning from the specific allegations listed earlier in the complaint, none of which implicate Crosley in relation to acts committed against plaintiff. Second, even if this allegation on its face were deemed sufficient to establish the element of fear required under the Hobbs Act, the allegation does not establish the primary element—inducing the victim to part with property. This reasoning applies equally to the allegation that Crosley supervised the Local 30 hiring hall. *See* footnote 6, *supra.*[8] Accordingly, the court will dismiss Count One, arising under RICO, as to defendant Crosley.

7. Dismissals under Rule 12(b)(6) are warranted only in cases where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

8. Nor do the more detailed allegations in the Memorandum In Support Of Plaintiff's Claim Under RICO give rise to a claim under the Hobbs Act. In that document plaintiff includes the following additional contentions relating to Crosley:

> Under the direction of defendant Crosley, the hiring hall was used to punish those who opposed the union officers; union members who were critical of union officers were denied referrals. Under the direction of defendant Crosley, Local 30 business agents who had been appointed by defendant Crosley, also pressured contractors to terminate any dissent[sic] union members in their employ. At [Crosley's] direction, members of the union who opposed him were subject to violence and intimidation at the union hall and in its meetings.

> In the fall of 1992, plaintiff O'Rourke reported to defendant Crosley that he and his em-

■ Allegations against defendant Lowry are more substantial. Plaintiff's complaint includes the following contentions: that Lowry is a business agent of Local 30 and at all relevant times was responsible for the Local 30 hiring hall (¶ 6); that Lowry "referred plaintiff for employment with a roofing contractor, Premier New York, Inc. ("Premier") and at the same time informed plaintiff that Local 30 disapproved of his working for Premier because another company at the construction site was being picketed" (¶ 13); that on several occasions while plaintiff was working for Premier, Lowry, along with other Local 30 members, came to the Premier job site, "shouted abuses" at plaintiff, and harassed and intimidated him (¶¶ 16, 23); that Lowry on two occasions informed Premier's superintendent that he disliked plaintiff for having crossed a picket line and urged that plaintiff should be laid off (¶¶ 19, 20); that the intimidation of Lowry and others caused plaintiff to resign his position at Premier (¶ 24); that for two weeks prior to plaintiff's resignation, Lowry and others "sought to threaten and intimidate Premier's superintendent into terminating plaintiff's employment (¶ 25); that "on three occasions Premier's superintendent requested that plaintiff be referred back to the job and the

> ployer had been subject to intimidation and harassment by representatives of Local 30, led by defendant Lowry, because plaintiff had worked on a job with Premier at the Atlantic City Convention Center. Despite the fact that the job with Premier was not struck, plaintiff was forced by the conduct of defendant Lowry ... to resign. The only response defendant Crosley made to plaintiff's complaints about the harassment and intimidation, was to emphatically announce his support for defendant Lowry's position.

Again here, none of the acts attributed to Crosley *in relation to plaintiff* state a claim under the Hobbs Act. That is, while the allegations that Crosley historically directed agents to punish or intimidate dissident union members theoretically would suffice to establish a prima facie Hobbs Act claim, such generalizations are insufficient in regard to plaintiff's claim in specific. Plaintiff has no standing to rely on violations allegedly committed against other individuals. The only acts allegedly committed against plaintiff by Crosley involve Crosley failing to take action against Lowry and expressing support for Lowry's "position." This alleged conduct is perhaps a breach of fiduciary duty on Crosley's part, but it is not extortionate conduct in violation of the Hobbs Act.

union failed or refused to refer him" (¶ 29); [9] that for "at least ten years prior to 1992, officers and agents of Local 30, including ... Lowry ..., used violence, threats of violence and other forms of intimidation to extort [various rights] from members of the union" (¶ 32); and that, through the aforementioned conduct, "officers and agents including [Lowry] created an atmosphere of fear and intimidation among the members, including plaintiff O'Rourke" (¶ 40).

■ This court finds that the foregoing allegations are sufficient to state a claim under the Hobbs Act. The conduct attributed to Lowry, if so established upon further discovery and proven at trial, appears to the court to satisfy the elements as articulated in *Local 560*—namely, inducement to part with property,[10] wrongful use of fear, and effect on interstate commerce.[11] Of course, at trial Lowry will have the opportunity to prove—as he currently alleges—that his conduct constituted protected acts of free speech and not wrongful threats or the like. At this stage of litigation, however, the allegations suffice to state a claim under the Hobbs Act and as such satisfy the "racketeering activity" element of RICO.

### b. "pattern"

Defendants next contend that plaintiff's RICO claim must be dismissed for failure to establish a "pattern" of racketeering activity, as required under 18 U.S.C. § 1962(c). The Supreme Court has interpreted "pattern" under Section 1961 as a "continuity plus relationship" requirement, in that a RICO plaintiff must show at least two related racketeering predicates and a continued threat of criminal activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

■ The court finds that plaintiff's claim satisfies this requirement in regard to defendant Lowry. Review of the acts allegedly committed by Lowry, listed above, reveals numerous racketeering predicates, inasmuch as plaintiff alleges numerous instances in which Lowry committed extortionate acts in violation of the Hobbs Act.

■ Defendants argue that the allegations do not extend over a sufficient period of time to meet the "continuity" portion of the "pattern" requirement.[12] While it is true that predicate acts extending over only a few weeks generally will not satisfy the "pattern" requirement, the "pattern" can alternatively be shown by demonstrating a *threat* of continuity. *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242, 109 S.Ct. 2893, 2902, 106 L.Ed.2d 195 (1989).[13] The *H.J.*

9. While not pleaded explicitly by plaintiff, the defendants construe plaintiff's complaint to contend that Lowry is responsible for refusing to refer plaintiff for employment. Defendants' brief reads in relevant part: "[P]laintiff contends that Lowry, who operates Local 30's Atlantic City hiring hall ... refused to refer him for employment from the hall...." Interpreting the complaint broadly, and taking into account the language in paragraph 6 of the complaint—alleging that Lowry was "responsible for" the hiring hall—the court finds, as defendants concede, that plaintiff attributes to Lowry liability for the union's hiring hall conduct. *Cf.* footnote 6, *supra*.

10. Without embarking on an extensive discussion of the subject, the court summarily concludes that the job, union membership, and rights associated with that membership—all allegedly extorted from plaintiff—constitute "property" under the Hobbs Act. *See Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1170 (3d Cir.1989) (job); *Local 560*, 780 F.2d at 281–82 (right to democratic union). This point is apparently conceded by defendants.

11. The court is satisfied, notwithstanding defendants' contention to the contrary, that plaintiff has alleged an effect on interstate commerce, as is required under the Hobbs Act. In his complaint, plaintiff pleads that Local 30 is an enterprise engaged in interstate commerce, a contention apparently not disputed by defendants. Inasmuch as plaintiff alleges that defendants resorted to extortionate conduct in order to maintain control over Local 30, plaintiff has met the "minimal" requirement of showing a "reasonably probable effect on commerce...." *U.S. v. Local 560*, 780 F.2d at 281 n. 15 (quoting *U.S. v. Cerilli*, 603 F.2d 415, 424 (3d Cir.1979), *cert. denied*, 444 U.S. 1043, 100 S.Ct. 728, 62 L.Ed.2d 728 (1980).

12. The acts committed against plaintiff are alleged to have occurred between September 9, 1992 and October 1, 1992.

13. The threat of further predicate acts in this context is referred to by the courts as "open-ended" continuity. *See id.* at 241–42, 109 S.Ct. at 2901–02.

court noted that, in addition to other methods, "the threat of continuity is sufficiently established ... where it is shown that the predicates are a regular way of ... conducting or participating in an ongoing and legitimate RICO 'enterprise.'" *Id.* at 242–43, 109 S.Ct. at 2902–03.

■ In this case, while the alleged predicates occurred over a very short period, the court finds that plaintiff may well be able to establish at trial that extortionate conduct is a regular way of conducting the Local 30 enterprise and, thus, that a threat of continuing racketeering activity exists.[14] Such a possibility is sufficient for a plaintiff to survive a motion to dismiss on grounds of failure to establish a "pattern of racketeering activity." *See H.J.*, 492 U.S. at 250, 109 S.Ct. at 2906 (reversing 12(b)(6) dismissal on analogous grounds). Accordingly, the court concludes that the RICO claim brought against defendant Lowry survives defendants' motion to dismiss.[15]

## B. LMRDA Claims

Plaintiff contends that the same conduct attributed to defendants in regard to his RICO claim also violated the LMRDA, under both 29 U.S.C. § 411 and 29 U.S.C. § 501.[16] Defendants move to dismiss both of these claims on grounds of preemption or, alternatively, for failure to state a claim.

## 1. Preemption

Defendants argue that plaintiff's LMRDA claims are preempted by the NLRA and by internal union remedies which must be exhausted prior to the filing of a claim in district court.

### a. NLRA Preemption

For the same reasons as set forth in the preceding sections concerning plaintiff's RICO claims, defendants contend that the alleged misconduct constitutes arguable or actual violations of the NLRA and is thus subject to the exclusive jurisdiction of the NLRB. This argument is meritless, as was noted above in the discussion on RICO; the holdings in *Hardeman* and *Sullivan* dictate that actions arising over alleged LMRDA violations are not preempted by the NLRA even where the challenged conduct may be construed as an unfair labor practice. *Hardeman*, 401 U.S. at 241, 91 S.Ct. at 615; *Sullivan*, 1992 WL 309635, at *7, 1992 U.S. Dist. LEXIS 16168, at *22. Accordingly, the alleged misconduct is not preempted by the NLRA.[17]

### b. Exhaustion of Remedies

Defendants also argue that plaintiff's LMRDA claims must be dismissed on the grounds that plaintiff failed to exhaust internal union remedies. Different requirements

---

14. Plaintiff alleges that Lowry's conduct in this case is characteristic of Local 30's methods of operation over the past ten years. Numerous hearings and cases involving Local 30 support plaintiff's allegation. *See, e.g., NLRB v. Local 30, United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association, AFL–CIO v. Schoenberger et al.*, 141 BNA LRRM 2459, 1992 WL 372381 (3d Cir.1992); *U.S. v. Local 30, United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association, et al.*, 686 F.Supp. 1139 (E.D.Pa.1988), *aff'd*, 871 F.2d 401 (3d Cir.1989).

Defendants argue that the current Local 30 leadership is comprised of individuals who were not involved in any past union misconduct; from this defendants conclude that a threat of continued misconduct does not exist. Yet in *U.S. v. Local 30*, Judge Bechtle imposed a "Decreeship" on the union despite the new leadership, noting that "misuse of power by and through Local 30 ... has endured for so long and is so deep-rooted that even the current leadership ... are also products of the old style.... For the immediate future, they can only be expected to follow the course that the old regime did." *Id.* at 1167–68.

Nor does the imposition of the Decreeship remove the threat of future racketeering activity. Indeed, the alleged activities in the instant case occurred well after Local 30 became subject to the Decreeship, which included the imposition of a court liaison officer. *Id.* at 1171.

15. Defendants raise no arguments specifically in regard to plaintiff's conspiracy claim arising under 18 U.S.C. § 1962(d). Accordingly, the § 1962(d) claim survives this motion as well as to Lowry.

16. The Section 411 claim is brought against the union in Count Four of plaintiff's amended complaint. The Section 501 claim is brought specifically against Crosley and Lowry in Count Two.

17. Of course, had this court ruled below that plaintiff has failed to state a claim under the LMRDA, then in that circumstance the NLRB would have been the only remedial avenue available to plaintiff.

apply to Sections 411 and 501; these are respectively addressed below.

### i. 29 U.S.C. § 411

■■■■ Section 411 contains a specific exhaustion requirement in subsection 411(a)(4), which provides in relevant part:

No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, . . . [p]rovided, [t]hat any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof. . . .

Exhaustion of internal union remedies is not an absolute requirement under Section 411, but rather is subject to judicial discretion. *Mallick v. International Brotherhood of Electrical Workers*, 644 F.2d 228 (3d Cir. 1981); *Semancik v. United Mine Workers*, 466 F.2d 144 (3d Cir.1972). Failure to exhaust internal union remedies is thus not a jurisdictional bar; rather, the exhaustion issue is an affirmative defense in which the defendant union bears the burden of persuasion. *Johnson v. General Motors*, 641 F.2d 1075, 1079 (2d Cir.1981); *accord Doty v. Sewall*, 908 F.2d 1053, 1061 (1st Cir.1990) (holding that union bears burden of proving both the existence of an adequate intra-union remedy and plaintiff's failure to exhaust it).

The *Semancik* court set forth three scenarios in which exhaustion may be waived: (1) where plaintiff would otherwise suffer irreparable harm, (2) where an inadequate or illusory appeals structure, or a structure dominated by individuals opposed to plaintiff, would render pursuit of internal remedies futile, and (3) where a union's consistent adherence to a position contrary to that advocated by plaintiff would result in similar futility. *Semancik*, 466 F.2d at 150–51.

■■■■ In this case, plaintiff contends that the history of violence and intimidation

in Local 30, in conjunction with the specific acts alleged to have been committed against plaintiff by Local 30 officials, make pursuit of internal union remedies futile. Additionally, plaintiff suggests that any internal remedies would not provide him with adequate relief for his alleged economic losses. Both of these contentions, if accurate, would under *Semancik* except plaintiff from the Section 411 exhaustion requirement.

Defendants argue that plaintiff has failed to adequately prove the applicability of the *Semancik* "futility" and "inadequate remedy" exceptions. This argument is unpersuasive for two reasons. First, while plaintiff does not address the inadequacy of internal remedies in his complaint, he does, in this court's view, include sufficient pleadings to make a prima facie case for application of the "futility" exception. Second, as noted above, it is defendants' burden to prove the applicability of the exhaustion requirement. The issue is thus a factual one—whether or not the atmosphere and remedial procedures of Local 30 warrant enforcement of the exhaustion requirement or, alternatively, exception from it.[18] Accordingly, the court rejects defendants' exhaustion argument in regard to plaintiff's Section 411 claim.

### ii. 29 U.S.C. § 501

■■■■ Section 501 does not have explicit exhaustion requirements as exist under Section 411, but does contain a procedural hurdle akin to the "demand" requirement imposed on shareholder-plaintiffs in corporate derivative actions. *Sabolsky v. Budzanoski*, 457 F.2d 1245, 1252 (3d Cir.1972) (citation omitted). Under Section 501(b), before suing a union officer in court, an aggrieved union member must first request that the union "sue or recover damages or secure an accounting or other appropriate relief"; only after the "labor organization or its governing board or officers refuse or fail" to take action may a member initiate a suit on his own behalf. 29 U.S.C. 501(b).

■■■■ In addition to the "request" requirement under 501(b), there is a "good cause"

---

**18.** Defendants' reliance on *Bee v. Local 719, United Auto Workers*, 744 F.Supp. 835 (N.D.Ill. 1990) in support of their motion to dismiss on grounds of exhaustion is unpersuasive. In that case, while the court ruled for the defendant union, it did so at the summary judgment stage of litigation, not in the context of a motion on the pleadings.

requirement imposed upon the union member. The statute provides in relevant part: "No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown...." *Id.* Thus while Section 501 does not mandate pursuit of internal union remedies, the "request" and "good cause" elements of the statute constitute two procedural requirements that must be satisfied in order to maintain an action in district court. *See Cowger v. Rohrbach,* 868 F.2d 1064, 1066–68 (9th Cir.1989) (analyzing both requirements).

■ Defendants contend that plaintiff has failed to satisfy either of these requirements. In regard to the "request" requirement, defendant argues that plaintiff made no such request and that failure to do so is fatal to his claim. In support of this contention, defendants cite to a Ninth Circuit case, *Flaherty v. Warehousemen, Garage & Service Station Employees' Local Union No. 334,* 574 F.2d 484 (1978), which indeed held that failure to allege such a request requires that the court deny leave to file the Section 501 claim. *Id.* at 487. Furthermore, the *Flaherty* court made explicit—as the Second Circuit had already done—that "[a]n allegation of the futility of such a request will not suffice." *Id.* (quoting *Coleman v. Brotherhood of Railway & Steamship Clerks,* 340 F.2d 206, 208 (2d Cir.1965)).

The Third Circuit, however, has refrained from adopting the strict reading of Section 501 that is adhered to by the Second and Ninth Circuits. In *Sabolsky,* 457 F.2d 1245, the Third Circuit set the stage for a less restrictive interpretation of the Section 501 "request" requirement. The *Sabolsky* court analogized the "request" rule to the exhaustion of internal remedies rule under the LMRDA, noting that the latter is not mandatory under the statute. *Id.* at 1252. The court suggested that circumstances may exist where "strict use of any exhaustion requirement would not be warranted." *Id.* at 1253. Noting that "a request to sue would have been an exercise in futility" in the matter before it, *Id.,* the *Sabolsky* court implicitly adopted a rule rejected in *Flaherty* and *Cole-*

*man*—that futility may serve as an exception to the "request" requirement.

Subsequent to *Sabolsky,* a district court in this circuit interpreted the *Sabolsky* holding as firmly establishing that the "request" element of Section 501(b) is not mandatory. In *Pawlak v. Greenawalt,* 464 F.Supp. 1265 (M.D.Pa.1979), the court observed:

[T]here is no absolute requirement in this Circuit that a Plaintiff request his union to take court action prior to the institution of suit. In *Sabolsky* ..., the Court stated that the requirement of requesting the union to take action prior to the institution of suit was similar to the requirement contained in other sections of federal labor statutes that a union member exhaust internal union remedies prior to filing suit and that it was not mandatory in all cases. In *Sabolsky,* the Court reviewed the actions of the Plaintiff prior to his filing of the action and stated there was no indication that the suit was filed as an attempt deliberately to harass the union, which underlies the Congressional requirement that a request to take some action be made before suit is filed. The Court also recognized that in certain situations a request to sue may be futile and that in such a case an action need not be dismissed because of the failure to make such a request.

*Id.* at 1269.

This court thus disagrees with defendants' contention that plaintiff's failure to make a formal request of the union warrants automatic dismissal of the claim. The circuit split on this issue works in plaintiff's favor—he is entitled the opportunity to prove that requesting that the union take legal action would have been futile. To this extent, the court finds that the pleadings are sufficient to state a case for waiver of the "request" requirement. Like in *Sabolsky* and *Pawlak,* where the plaintiffs made informal attempts to gain relief from the union, in this case plaintiff alleges that he took his complaint to defendant Crosley—then business manager of Local 30—and was effectively ignored. There is no indication—nor any allegations by defendants—that plaintiff's conduct constitutes harassment of the union. Accordingly, the complaint will not be dismissed for

failure to satisfy the "request" requirement of Section 501(b).

■ Nor is plaintiff's complaint subject to dismissal for failure to file a "good cause" application at the outset in litigation. The relevant precedents in this circuit make clear that a lack of formality in observing the Section 501(b) "good cause" requirement will not bar a court from granting leave where deemed appropriate. *See Sabolsky,* 457 F.2d at 1249–50 (citing *Horner v. Ferron,* 362 F.2d 224 (9th Cir.1966)) (holding that allegations in complaint potentially sufficient to establish good cause); *Pawlak,* 464 F.Supp. at 1269 (same). The court thus concludes that defendants' arguments in regard to exhaustion of remedies do not present grounds for dismissal of plaintiff's claims arising under Sections 411 [19] and 501.[20]

### 2. Failure to State a Claim

#### a. Section 411

■ Defendants next allege that plaintiff has failed to state a claim under 29 U.S.C. § 411 against defendant Local 30. Section 411 confers numerous rights on all labor organization members, including equal rights to vote and attend meetings, the right to "meet and assemble freely," and the right to express "any views, arguments, or opinions." 29 U.S.C. §§ 411(a)(1)–(2). Section 412 provides a cause of action to any person whose rights under Section 411 have been infringed. The Third Circuit has held that Section 411 guarantees union members the right to participate in union affairs without fear of retaliation. *Brenner v. Local 514, United Brotherhood of Carpenters & Joiners,* 927 F.2d 1283, 1298 (3d Cir.1991).

Defendants argue that plaintiff has not alleged any deprivation of his abilities to participate in union affairs. They contend that the allegations that defendants refused to refer plaintiff for work and forced him to resign his employment do not implicate Section 411. Further, they contend that plaintiff fails to allege that any acts committed against him were undertaken to retaliate against him for the exercise of his rights. Defendants additionally argue that plaintiff's complaint fails to sufficiently describe the "discrimination" suffered by him, and fails to implicate Local 30 in the perpetration of any acts of discrimination or harassment.

The court disagrees with defendants' position. Plaintiff has pleaded in his complaint that, because he refused to accede to the views of Lowry and other members of Local 30, he was subjected to repeated harassment and intimidation on the part of Lowry, Local 30's business agent; he was effectively forced out of his job at Premier; he was repeatedly denied referrals *by the union* in violation of union rules; and, as a result of the harassment and the denial of referrals, he was ultimately led to withdraw from the union.

The aforementioned conduct suffices to state a claim under Section 411. The Third Circuit has observed that a union's manipulation of hiring hall procedures in discrimination against a member for exercising his Section 411 rights states a claim, even where there is no allegation of unlawful discipline. *Brenner,* 927 F.2d at 1298 (citing *Guidry v. Internat'l Union of Operating Engineers Local 406,* 907 F.2d 1491, 1493 (5th Cir.1990)). Plaintiff is thus entitled the opportunity to prove at trial that the union's conduct in denying referrals to him constituted discrimination against him, and resulted from his refusal to accede to the views adhered to by union officials. The court finds that such conduct, if proven at trial, is in violation of plaintiff's rights under Section 411, specifically implicating plaintiff's right to "express any view." Accordingly, the court concludes that plaintiff has stated a claim under Section 411 against defendant Local 30.

#### b. Section 501

■ The defendants similarly argue that plaintiff has failed to state a claim under Section 501 against defendants Crosley and Lowry. Section 501 imposes a series of fidu-

---

**19.** Claims alleging violations of 29 U.S.C. § 411 in fact arise under 29 U.S.C. § 412.

**20.** As noted above in the discussion of Section 411 exhaustion requirements, defendants remain entitled to pursue summary judgment on these same issues if after sufficient discovery it is determined that plaintiff's futility claims are meritless.

ciary duties on union officers and agents. While the thrust of the statute is financial, the courts have made clear that Section 501 also creates a duty to "insure the political rights" of all union members, namely, rights arising under Section 411. *Semancik,* 466 F.2d at 155. The fiduciary principle is extended to all activities of union officers and agents. *Sabolsky,* 457 F.2d at 1250.

■ The court finds that plaintiff has stated a claim under Section 501 against both Crosley and Lowry. As to Lowry, this conclusion is self-evident. Lowry, himself an agent of Local 30 during the events in question, is accused not only of failing to insure plaintiff's rights, but of directly violating those rights as well. The court additionally finds that plaintiff has stated a Section 501 claim against defendant Crosley. While the allegations made against Crosley failed to state a claim under RICO, as discussed above, they suffice in regard to Section 501. Plaintiff has alleged that Crosley knew of the harassment suffered by plaintiff, and yet did nothing to remedy the situation. Such conduct, if so proven at trial, contravenes the affirmative obligations imposed on Crosley under Section 501 and *Semancik.* The court thus concludes that plaintiff has stated a claim under Section 501 against both Crosley and Lowry.

### C. Common Law Breach of Duty

Defendants finally contend that plaintiff's common law claim for breach of the duty of fair representation—brought against defendant Local 30 in Count 3—is both preempted and fails to state a claim. This contention is meritless on both points.

#### 1. Preemption

■ As they contended in regard to the RICO and LMRDA claims, defendants argue that the alleged misconduct underlying plaintiff's common law claim is at most an unfair labor practice and thus is subject to exclusive NLRB jurisdiction. The caselaw states clearly to the contrary. In *Breininger v. Sheet Metal Workers International Association Local Union No. 6,* 493 U.S. 67, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989), the Su-

preme Court held that the allegation that a union discriminated against a dissident member by refusing to refer him for employment states a claim for breach of the duty of fair representation that is cognizable in federal court. *Id.* at 73–84, 110 S.Ct. at 429–36. The court explicitly rejected the contention, advanced by defendants, that the NLRB has exclusive jurisdiction over fair representation complaints in the hiring hall context. *Id.* at 75, 110 S.Ct. at 430. The Third Circuit has subsequently held that discrimination in the hiring hall context indeed constitutes a breach of duty. *Brenner,* 927 F.2d at 1288. Plaintiff's common law claim is thus not preempted.

#### 2. Failure to State a Claim

■ Defendants appear to argue as well [21] that Count Three should be dismissed for failure to state a claim. This contention too is meritless. Plaintiff alleges in his complaint that the union refused to refer him for employment with Premier despite the employer's explicit request that plaintiff be so referred. Plaintiff further alleges that such conduct violated Local 30 rules and was motivated by the union's hostility toward him. Such an allegation states a claim under *Breininger* and *Brenner.*

### III. Conclusion

For the foregoing reasons, the court shall dismiss with prejudice Count One, arising under RICO, as to defendant Crosley, but not as to defendant Lowry. Defendants' motion is denied in all other respects.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

This matter having arisen on defendants' motion to dismiss; and

The court having considered the submissions of the parties; and

For the reasons stated in the court's opinion of this date;

**IT IS** on this 28 day of March 1994 hereby

---

21. Defendants do not argue this point in their

brief, but did raise it at oral argument.

**ORDERED** that the motion is **GRANTED IN PART AND DENIED IN PART** as follows:

(1) The court shall and does hereby **DISMISS WITH PREJUDICE** Count One, arising under RICO, as to defendant **CROSLEY,** but not as to defendant **LOWRY,** against whom the claim shall remain intact;

(2) Defendants' motion is in all other respects **DENIED.**

No costs.