United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 5, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 02-20070
_____

LOUIS A. HOFFMAN,

                                        Plaintiff-Appellant,

versus

JOHN E. KRAMER; MARILYN H. ZEILER;
PATRICK F. FILBURN,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

Before JOLLY, HIGGINBOTHAM, and MAGILL,* Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Before union members may sue officers of their union for breach of their fiduciary duties under Title V of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501(a), they must convince the trial court that there is "good cause" for the suit. 29 U.S.C. § 501(b). This court has not had occasion previously to address this "good cause" requirement. We do today.

The district court denied Louis Hoffman's application for leave to sue three <u>former</u> officials of his union, the Southwest Airline Pilots Association ("SWAPA"). The district court held that

---

*Senior Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

good cause did not exist to permit Hoffman to proceed with his claims against the three defendants. After careful evaluation of the statute and the claims, we agree, and affirm the judgment of the district court.

I

SWAPA is the collective bargaining agent for the Southwest pilots, including Hoffman. From 1997 to 2000, defendants John Kramer, Marilyn Zeiler, and Patrick Filburn served as officers of that union. Kramer was the President of the union and Zeiler was Secretary/Treasurer. Filburn was a board member and later elected Vice-President in November 1999. That election was challenged by Filburn's opponent and the union agreed to a new election after the Department of Labor found "probable cause to believe that violations of Title IV of the LMRDA occurred which may have affected the outcome of the election . . . ." In March 2001, after a new, supervised election, Filburn was voted out of office. Ultimately all the defendants were replaced and new officers were elected. The record reflects that contentious and fractious relations had existed over a variety of topics between some members of SWAPA and the defendants during their tenure. Hoffman, who was part of a cadre of reformers, perceived mismanagement and improper administration of the union's interests and funds during the defendants' tenure and, despite the election of new officers, he petitioned the union for an accounting and other remedial action

2

against the former union officials.  After discussion by its current board, SWAPA refused.

Hoffman then brought this suit under 28 U.S.C. § 501, first seeking authority to sue the former union officials.  Section 501(a) imposes fiduciary duties on union officials not to engage in self-dealing, spend union funds for personal benefit, or act adversely to union interests.  These officials must also account to union membership for any gains they receive in connection with their union office.[1]  Individual union members may sue union

_____

[1]29 U.S.C. § 501(a) sets out "Duties of officers; exculpatory provisions and resolutions void:"

> The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group.  It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization.  A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory

3

officers on behalf of the union only if the union refuses to take action in response to allegations of official corruption. Additionally, a person seeking to sue the officials must first obtain leave of the court to sue by showing "good cause" for the suit.[2] The purpose of this threshold requirement is to discourage

> resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

29 U.S.C. § 501(a).

[2] 29 U.S.C. § 501(b) provides:

> When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.

4

misuse of litigation and to minimize judicial interference in the management of labor organizations.  See Ray v. Young, 753 F.2d 386, 389 (5th Cir. 1985).

Hoffman alleged several irregularities in the administration of SWAPA during the period from 1997 to 2000 which, according to his verified application for leave to file suit, amount to breach of fiduciary duties under § 501(a).  Hoffman alleged that the defendants breached their fiduciary duty by destroying records, taking money while not working, wasting union funds, spending union funds on personal expenses, and self-dealing in negotiations.  He further contended that the actions were undertaken in violation of SWAPA's Constitution and Bylaws.

The district court held a hearing on Hoffman's request for leave to file suit and, after concluding that Hoffman had failed to show good cause under § 501(b), denied Hoffman's application.  The court found that "[t]he proposed claims do not arise from the duties demanded by the statute."  The district court, however, did not articulate further what standard for good cause it considered in assessing Hoffman's claims.  Our review of the denial of Hoffman's application requires us to determine the appropriate standard to be applied under 29 U.S.C. § 501(b) de novo.  Walgreen Co. v. Hood, 275 F.3d 475, 477 (5th Cir. 2001); Dial One of the Mid-South, Inc. v. BellSouth Telecommunications, Inc., 269 F.3d

---

29 U.S.C. § 501(b).

523, 525 (5th Cir. 2001) (statutory interpretation reviewed de novo). The standard for "good cause" and the ultimate conclusion whether there is good cause for permitting leave to file suit -- mixed questions of law and fact -- are subject to plenary de novo review. See Tyler v. Union Oil Co. of California, 304 F.3d 379, 402 (5th Cir. 2002).

II

As we have noted, this circuit has not had occasion to address the scope of the good cause review of a § 501(b) application. Other circuits have addressed the standard and the cases construing the good cause requirement fall along a continuum that reflects in varying degrees some consideration of the merits of the case. This body of case law begins with Horner v. Ferron, 362 F.2d 224, 228 (9th Cir. 1966). Horner observed:

> The requirement of section 501(b) that a plaintiff in such an action show 'good cause' before being entitled to file the complaint is intended as a safeguard to the affected union against harassing and vexatious litigation brought without merit or good faith. The allegations of the verified complaint may be sufficient to enable the court to determine whether there is 'good cause.' Thus section 501(b) provides that such an application may be made ex parte. But the court may, on its own motion, call for a hearing, or may grant the defendant's motion for a hearing. At such a hearing, the court may, if it chooses, look somewhat beyond the complaint in determining whether the plaintiff has made the 'good cause' showing required by section 501(b).

Horner, 362 F.2d at 228-29 (footnotes and citations omitted).

6

The <u>Horner</u> court noted that a defendant union or union official could defeat a good cause showing through "undisputed affidavit[s]" showing that the plaintiff failed to comply with some condition precedent to suit or was not a member of the union sued, or that the action was barred by the statute of limitations, res judicata or collateral estoppel. <u>Id.</u> Although such facts would not appear in the verified application, they would warrant a denial of the application. The <u>Horner</u> court further observed that

> we think it inappropriate to consider, at such a hearing, defenses which require the resolution of complex questions of law going to the substance of the case. Defenses of this kind should be appraised only on motion for summary judgment or after a trial. Defenses which necessitate the determination of a genuine issue of material fact, being beyond the scope of summary judgment procedure, are a fortiori, beyond the scope of a proceeding to determine whether a section 501(b) complaint may be filed.

<u>Id.</u> at 229 (footnote omitted). The Third, Eleventh, and D.C. Circuits follow the <u>Horner</u> approach. <u>Loretangeli v. Critelli</u>, 853 F.2d 186 (3rd Cir. 1988); <u>Erkins v. Bryan</u>, 663 F.2d 1048 (11th Cir. 1982); <u>George v. Local Union 639</u>, 98 F.3d 1419 (D.C. Cir. 1996).

The Second Circuit has adopted an approach that requires a more demanding showing. In <u>Dinko v. Wall</u>, 531 F.2d 68 (2nd Cir. 1976), the court held that the good cause requirement meant that the "plaintiff must show a reasonable likelihood of success and, with regard to any material facts he alleges, must have a reasonable ground for belief in their existence." <u>Dinko</u>, 531 F.2d

7

at 74.  No other circuit has adopted the "reasonable likelihood of success" requirement.  Indeed, the Third Circuit explicitly rejected the Dinko court's analysis, concluding that the reasonable likelihood of success requirement "is not mandated by the statute's language, finds no support in the LMRDA's legislative history, conflicts with the Congressional policy of protecting union members, and permits summary elimination of meritorious as well as vexatious suits." Loretangeli, 853 F.2d at 191.  The Third Circuit further noted that although "Congress clearly intended that the plaintiff make some showing of the validity of the complaint that exceeded the filing requirements of the Federal Rules of Civil Procedure," the statute did not require the district court to consider the merits of the case.  Loretangeli, 853 F.2d at 192. For the reasons indicated below, and without gainsaying either the Dinko or Horner approaches, we articulate a somewhat more specific analysis for determining good cause under § 501.

                                III

     Obviously, the first step a court should undertake in reviewing a claim is to ascertain that the allegations meet the minimal requirements of the statute.  Thus, as a threshold matter, the court must insist upon a showing that (1) the misconduct alleged directly relates to duties enumerated in § 501(a);[3] (2)

_____

     [3]Section 501(a) imposes three basic fiduciary duties on union officials: (1) to hold the union's money and property solely for the benefit of the union and its members and to manage, invest, and

given the derivative nature of the plaintiff's suit on behalf of the union, the plaintiff seeks remedies that would realistically benefit the union and/or its membership, and (3) the alleged breaches in question were presented to the union, which then failed or refused to act on them.

We think, however, that meeting these minimal requirements alone is not enough to satisfy the requirements for good cause. The mere refusal or failure of a union to seek redress for

expend the same in accordance with the union constitution and bylaws; (2) to refrain from dealing with the union as an adverse party and from holding or acquiring any pecuniary or personal interests which conflict with the interests of the union; and (3) to account to the union for any profit received by the official in connection with transactions conducted by him on behalf of the union. 29 U.S.C. § 501(a). We note that in the past, this Court has declined to delineate the precise scope and breadth of these enumerated duties. See Vincent v. International Brotherhood of Electrical Workers, 622 F.2d 140, 143 (5th Cir.1980); Ray v. Young, 753 F.2d at 390 n.2; Adams-Lundy v. Ass'n of Professional Flight Attendants, 844 F.2d 245, 250 n.25 (5th Cir. 1988). The language of § 501(a), however, clearly indicates that the fiduciary obligations imposed are primarily pecuniary in nature -- that is, having do to with the custody, control, and use of a union's money and its financial interests or property and the conduct of union officials in relation thereto. The circumscribed nature of § 501(a)'s fiduciary duties has also been noted by the Second Circuit. See Dunlop-McCullen v. Local 1-S, AFL-CIO-CLC, 149 F.3d 85, 93 (2nd Cir. 1998) (stating that "[s]ection 501 applies to fiduciary responsibility with respect to the money and property of the union and it is not a catch-all provision permitting suit on any ground of misconduct") (internal citations and quotations removed); Guzman v. Bevona, 90 F.3d 641, 646 (2nd Cir. 1996)(noting that the Second Circuit has "strictly interpreted the scope of the fiduciary duty imposed on union officers by section 501(a), limiting recovery to claims that centrally challenged misuse of union money and property and rejecting those that centered on other breaches of trust that only incidentally affected union funds")(internal quotations removed).

appropriately presented breaches of LMRDA duties does not itself give license to union members to bring suit under the statute. Instead, that refusal must in some way be objectively unreasonable. As the Sixth Circuit aptly noted in a slightly different context, the LMRDA "is not meant as a vehicle for judicial oversight of union activity, but only as a means of addressing unreasonable and arbitrary actions by union officials. The federal courts do not sit as a 'super-review' board of internal union grievances unless there is evidence of impropriety in the proceedings." United Food and Commercial Workers Int'l Union Local 911 v. United Food and Commercial Workers Int'l, 301 F.3d 468, 475 (6th Cir. 2002) (quoting Corea v. Welo, 937 F.2d 1132, 1143 (6th Cir. 1991)). Indeed, although various rights of the dissenting minority may be recognized in the law, the Supreme Court has long noted that the "majority rule concept is today unquestionably at the center of our federal labor policy." NLRB v. Allis-Chalmers Mfg. Co., 388 U.S. 175, 180 (1967). Accordingly, the requirement that applicants for leave to sue establish good cause effectuates the LMRDA's "primary objective of ensuring that unions would be democratically governed and responsive to the will of their memberships." Finnegan v. Leu, 456 U.S. 431, 435 (1982) (applying Title I, but discussing the LMRDA more broadly).

We think, therefore, that an objectively reasonable decision by union leadership not to pursue a claim is entitled to some

10

deference.[4]  To this end, the district court should ensure that the plaintiff show -- either in verified pleadings, affidavits, or a hearing, if ordered by the district court -- that the union's refusal to act was objectively unreasonable, assessed from the point of view of the membership as a whole.  This deference is

---

[4]Because the suit by a union member is "for the benefit of the labor organization," § 501(b), we find aspects and principles of the law regarding shareholder derivative lawsuits to be instructive. A shareholder derivative action is brought by a shareholder on behalf of the corporation to remedy an alleged injury to the corporation where the corporate cause of action is, for some reason, not asserted by the corporation itself.  See W. Fletcher, Cyclopedia of the Law of Private Corporations § 5947 (Perm. ed. 1995); Kamen v. Kemper Financial Services, Inc., 500 U.S. 90, 95-96 (1991).  In the context of shareholder suits, proof of demand or futility is usually a condition precedent to suit. See Aronson v. Lewis, 473 A.2d 804, 811-12 (Del. 1984) (demand requirement recognizes directors' discretion in managing corporate affairs, prevents undue interference with that management, and deters strike suits); Fletcher, supra, § 5963.  The demand requirement allows directors to make a business decision about whether to invest the resources necessary to pursue the claims. Because the directors are entrusted with the discretion and judgment to pursue the best interests of the corporation, and they are presumed uniquely situated to make these decisions, their conclusions are due deference under the so-called Business Judgment Rule.  The precise content of the Business Judgment Rule is provided by state law but, generally speaking, "[u]nder this familiar rule of American jurisprudence, the courts refrain from second guessing business decisions made by corporate directors in the absence of a showing of fraud, unfairness or overreaching." Capital Bancshares, Inc. v. F.D.I.C., 957 F.2d 203, 207 (5th Cir. 1992).  Indeed, some contend that union leaders are arguably more accountable to their membership than are corporate officers and directors to their shareholders.  This makes deference to elected, disinterested union officials' decisions all the more appropriate. See Bruce A. Herzfelder and Elizabeth E. Schreiver, *The Union Judgment Rule*, 54 U. Chi. L. Rev. 980, 994-95 (1987) (arguing workers have more incentive, opportunity, and ability to exercise certain controls over their agent, the union official, through monitoring and voting, than do corporate shareholders over their agents).

11

appropriate only when the democratic accountability of a union is not seriously at issue. Objectively reasonable determinations by disinterested union leaders not to bring an action seem to us a strong indication that the claims may be ill-suited as a springboard for judicial intervention into the management of a labor organization that is democratically accountable to its membership.

To be sure, Title V of the LMRDA explicitly instructs the courts to consider "the special problems and functions of a labor organization" in determining the fiduciary obligations demanded of these officials. When read in context with the other provisions of the LMRDA governing internal union democracy and members' rights, Title V of the LMRDA appears to target the sort of corruption or misappropriation of the union fisc that might pervert, or be left unremedied by, the union's democratic processes. Thus, these aspects of the good cause requirement -- that the plaintiff show that the prosecution of the claims will benefit either the union as collective bargaining representative or its membership, and that the union's refusal to address the claims was objectively unreasonable -- reflect faith that union democracy will ordinarily serve as an adequate safeguard against mismanagement by rogue officials. Therefore, only upon a sufficient showing that the union's refusal to act on the members' complaint was unreasonable

in the light of the purposes of § 501 should leave to sue be granted.[5]

IV

If a court has satisfied itself that the proposed suit, if successful, should inure to the benefit of the union as collective bargaining representative and/or the union membership, and that the union's refusal to proceed was objectively unreasonable, the court must then proceed to assess, to some degree, the substantiality of the claims alleged. We recognize that the court's earlier inquiries often will have addressed the substantiality of the claims. Nevertheless, in addition to the foregoing preconditions to suit, it is clear that to establish "good cause" there must be a showing of a breach of a duty found in § 501(a), with such specific facts that the court is convinced there is a factual basis to surmise that the claims have the potential to raise a genuine issue of material fact.[6] At the same time, however, the court must keep in mind the admonition in <u>Horner</u> that it is "inappropriate to consider . . . defenses which require the resolution of complex

---

[5]The reasonableness of a union board's refusal or failure to act on alleged breaches of fiduciary duty will necessarily be fact and context specific. Accordingly, a district court's determination as to the reasonableness or unreasonableness of a decision not to pursue a particular claim should be evaluated under an abuse of discretion standard.

[6]It is always within the discretion of the district court to decide whether its determination in this respect is most appropriately achieved through a review of the complaint only, or affidavits, or an ex parte conference (when confidentiality is essential), or a hearing, or some combination of these methods.

13

questions of law going to the substance of the case" or "[d]efenses which necessitate the determination of a genuine issue of material fact . . . ." Horner, 362 F.2d at 229.[7] In sum, the district court must be convinced that the allegations of the complaint have some basis in fact that merit proceeding further.

To sum up, the substance of the "good cause" requirement of § 501(b) requires a few essential steps for district courts to take beyond Rule 12(b)(6) in evaluating applications for leave to sue union officials. First, the court must determine that the alleged misconduct directly relates to the duties enumerated in § 501(a).

---

[7]The standard for determining whether an applicant has stated such a claim goes beyond the analysis of a motion to dismiss under FED. R. CIV. P. 12(b)(6). Under Rule 12(b)(6), "[t]he complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." Collins v. Morgan Stanley Dean Witter, 294 F.3d 496, 498 (5th Cir. 2000) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "The district court may not dismiss a complaint under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. Section 501(b)'s "good cause" requirement demands considerably more of plaintiffs than to survive a Rule 12(b)(6) motion. Otherwise, that part of the statute would be superfluous, and would run afoul of the "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." TRW, Inc. v. Andrews, 534 U.S. 19, 31 (2001) (quoting Duncan v. Walker, 533 U.S. 176, 174 (2001) (internal quotation marks omitted)). We should reiterate, however, that "good cause" review does not require the type of showing that would be necessary to prevail at the summary judgment stage. "Defenses which necessitate the determination of a genuine issue of material fact, being beyond the scope of summary judgment procedure, are a fortiori, beyond the scope of a proceeding to determine whether a section 501(b) complaint may be filed." Horner 362 F.2d at 229.

14

Second, because of the derivative nature of an applicant's suit, the court must satisfy itself that the applicant seeks remedies that would realistically benefit the union as the collective bargaining representative of its members and/or the membership of the union. Third, the application must allege facts that will support a conclusion that the alleged breaches of § 501 were presented to the union. Fourth, the applicant must make a showing that the union's refusal to act on the breaches presented to it was objectively unreasonable in the ways we have earlier discussed. Finally, after the court is satisfied that these conditions are met, the plaintiff must convince the court by the allegations of the verified application, or affidavit or otherwise, that some evidence exists, disputed or not, that will support the claims of a breach of fiduciary duty under § 501(a).

V

We now turn to the allegations in this case. In his verified application for leave to file suit under § 501(b), Hoffman alleges numerous violations of the former union officials' duties under § 501(a) to the SWAPA membership.[8] Further, it is important to note

---

[8]The Application lists the following alleged breaches:

   a.    drawing a full-time salary without working;
   b.    Filburn's pay increase due to illegal election as vice-president;
   c.    depleting union funds to run a second election after the Department of Labor declared an election illegal;
   d.    misusing the union hired attorney and offices;

15

that the plaintiff was given a hearing before the district judge where his claims were explored and vetted.  These claims arise in connection with three broad categories:  the voided election, office procedures and administration, and contract negotiation.  Consistent with the requirements of § 501(b), Hoffman requested that the union board investigate his allegations of malfeasance by former officials Kramer, Zeiler, and Filburn.[9]  The record reflects "extensive discussions" by the current board about Hoffman's potential lawsuit against the former officers, but Hoffman does not

---

e. destroying union records;
f. allowing staff to take time off with pay without authorization or disclosure to the membership;
g. allowing the executive secretary to take excessive time off without authorization or disclosure to the membership;
h. allowing the union to pay for an employee's advance degree without authorization or disclosure to the membership;
i. using union funds for personal expenses;
j. hiring the union president's friend without board approval and accepting benefits without disclosure;
k. accepting tangible benefits without disclosure;
l. violating the Union Constitution for personal political reasons;
m. violating the Union Constitution leading to needless expenditures of union funds;
n. failing to disclose material facts related to contract votes;
o. destroying budget records.

[9]The record is unclear as to whether all the claims contained in the Application and Complaint were in fact presented to the current union board when Hoffman requested an accounting.  We reiterate that Hoffman must satisfy the statutory precondition to suit for all claims -- "the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so . . . ." 29 U.S.C. § 501(b).

16

suggest in his Application or Complaint, nor make any argument in his brief on appeal, that the current Board was interested, biased, or unreasonable in failing to investigate and bring its own charges against the defendants for these alleged breaches by the defendants. After reviewing these claims, we conclude that the district court committed no reversible error in denying leave to sue on each of them. This denial was appropriate as Hoffman failed to make some plausible showing either of actionable breaches of § 501(a) fiduciary duties or that the union's decision not to pursue particular claims was unreasonable.

(a)

Turning to the first category -- expenses related to the election -- Hoffman essentially alleges that the defendants conspired to rig the November 1999 election and seeks funds allegedly misused during and as a result of this conspiracy.[10] The district court found no good cause to proceed on these claims because "the remedy for the defective electoral process is not this suit but the intervention of the Labor Department. . . . This dispute has been resolved. . . . The money spent to re-run the election did not personally benefit the defendants." The Department of Labor investigated the possible irregularities in the

---

[10]These claims, laid out more fully in the Complaint filed with the court, include the cost of the re-run election, and the increased salary temporarily drawn by defendant Filburn during the period he was vice-president as a result of the challenged election.

17

November 1999 election and these irregularities were in fact addressed by the election which took place in March 2001.

We think it is clear that Section 501 is not generally intended as a statute to impose personal liability on union officials for funds expended in the course of activity that violates other titles of the act.[11] Although we cannot say that allegations of illegal electioneering activities will never give rise to a breach of § 501(a) duties, we can say that this is not such a case. Here, all that is clear from the record is that Hoffman has alleged that the defendants "conspired to conduct an illegal election" and that the Department of Labor later decertified the original election and ordered a rerun after finding a series of violations of Title IV of the LMRDA. The general allegation that officers conducted an illegal election does not state a breach of the duties referred to in § 501(a), although it may violate other provisions of the act. We therefore agree with the district court's conclusion that Hoffman failed to allege any

---

[11]There are different types of enforcement mechanisms for the other parts of the statute, which means that § 501(b) usually will not be an appropriate remedy for addressing violations of other titles of the LMRDA. See, e.g., 29 U.S.C § 412 (authorizing civil actions by members for violations of union member's individual rights under Title I of LMRDA); § 440 (providing civil action by Secretary of Labor for enforcement of reporting and disclosure requirements, Title II); § 464 (requiring investigation and suit by Secretary upon valid complaint about unlawful trusteeship, and authorizing civil action by union member, Title III); § 482 (enforcement provisions for election violations, Title IV).

actionable breach of fiduciary duties under § 501(a) concerning the election.

Even assuming, however, that Hoffman had adequately alleged a genuine breach of § 501(a) fiduciary duties, Hoffman has failed to make any showing that the union's decision not to pursue the election claims was objectively unreasonable. There has been no allegation, for example, that the current board members were interested, biased, or derelict in their duties. Moreover, there are no allegations that the cost of pursuing the claims was justified by any potential recovery; nor was there an allegation that Filburn did not properly receive his salary as vice president under the Constitution and Bylaws of the union because, while there were irregularities in the election, he nevertheless performed the duties he assumed.

(b)

The second group of claims relates to Hoffman's disagreements with the manner in which the defendants handled the internal administration of the union during their tenure.[12] The

---

[12]The claims concern the work schedules and salaries of Kramer and Zeiler, the leasing of office space to the union attorney at allegedly below-market rates, the destruction of union documents by defendants, personnel decisions regarding time off and educational expenses for staff as well as termination and discipline of staff, the retention of outside consultants, the alleged improper acceptance of private transportation by defendants from third parties, and the improper use of union postage to send mail to union members rather than use the union newsletter. (claims (a), (d)-(m), and (o) in the Verified Application).

19

district court found that these "routine operating decisions . . . [such as] [d]eciding to pay for an employee's graduate studies, giving employees extra time off, or even shredding union documents are not breaches of a fiduciary duty covered by the statute." Relying on the union officials' accountability to the membership, the court concluded that "[d]isagreements over union policies -- complaints about business judgment, work habits, employee leave, and budgeting -- are for campaigns against incumbents" and do not constitute good cause for this lawsuit. In fact, the record reflects that many of these issues were directly addressed in the next election -- the candidate for the presidency of SWAPA explicitly noted many of the perceived deficiencies of the previous officers' tenure.[13] We see no error in the district court's evaluation of these claims. These claims generally alleging maladministration of the union's affairs by the defendants are either not amenable to monetary damages, for example the alleged destruction of union and budget records or the acceptance of a plane ride without disclosure; or were not for the defendants' personal financial benefit, as for example

---

[13]In campaign materials, candidate Steve McPhail stated "[w]e are now suffering from the effects of an absentee president. . . . We have had a perfect example of what not paying attention to the little details can do to an organization. . . . When the president chooses to work less than a full work week, we all suffer. . . . We voted many years ago to pay the president 115% of the line average . . . . When I voted for that, I thought it mean the president would be in the office all week. *Apparently I was wrong.*" (emphasis in original).

20

the decisions to hire consultants or grant staff time off; or were made within the authority of the particular office. As such, they do not appear to fall within the subject matter of § 501(a).

Concerning these claims, the district court concluded that "[h]owever stupid and wasteful the former officers' actions may have been, they raise issues of time, attendance, performance and administration -- not breach of fiduciary duty. The law confides these concerns to the union membership through the election of officers; in fact, the defendants have already been replaced on the union's board." We agree with the district court that disagreements over the wisdom or appropriateness of particular administrative and employment actions and decisions are usually not amenable to suit under the LMRDA. Indeed, most of these matters are the sort of "internal union grievances" properly left to be worked out via union democratic processes (as they eventually were here) and not by a federal court sitting as a sort of "super-review board." United Food and Commercial Workers Int'l Union Local 911, 301 F.3d at 475.

The closest Hoffman comes to alleging a breach of a § 501(a) fiduciary duty in the context of this category of claims is his allegation that Zeiler and Kramer failed to work "full-time"

21

while being paid a full-time salary.[14]  But this allegation is not enough to constitute a breach of § 501(a) duties.  Essentially, Hoffman is alleging that Zeiler and Kramer were derelict in the performance of their employment obligations as union officials; in doing so, they did not earn their salaries; by accepting their salaries while not working full workweeks, they breached § 501(a) duties by misusing union funds for their personal benefit.  Section 501(a), however, does not permit these derivative actions for dereliction of employment duties.  Disputes over whether elected union officials are adequately performing their employment obligations are matters usually to be worked out within the union and its governing structure and not in the federal courts.  The statute cannot be plausibly read to give rise to a cause of action against a union officer whenever there is a disagreement concerning his work schedule or work ethic.

---

[14]Hoffman asserts one minimal claim that may be characterized as a breach of a § 501(a) fiduciary duty:  He alleges that union funds were used for the personal benefit of the defendant Kramer, who "used union funds to ship a large set of moose antlers to his home in Albequerque, New Mexico."  The district judge found that the antlers, Kramer's personal property, were used as office decoration and the union's benefit from their use was consideration for their shipment at the close of Kramer's tenure.  We find no error in the conclusion that this claim should be dismissed as lacking good cause.  While it may state a literal, cognizable claim of breach of fiduciary duty, it is a de minimis expenditure that does not justify a federal lawsuit.  Neither was the union's refusal to mount an effort to recover this relatively minor amount unreasonable.

22

Therefore, the district judge did not err in finding that good cause for a § 501 suit did not exist on any of these claims relating to the alleged maladministration of union affairs. None of these allegations rise to the level of actionable breaches of fiduciary duty actionable under § 501(a). For this reason, we AFFIRM the district court's denial of leave to sue on these claims.

(c)

Finally, Hoffman alleges that the defendants engaged in improper and unauthorized negotiations with Southwest, and that they illegally failed to disclose material facts related to contract votes.[15] Essentially the claim is that, beginning in 1998, Kramer and Zeiler conspired with Southwest Chairman Kelleher to arrange an early contract vote, which would improperly benefit older employees to the detriment of new hires. This conduct was allegedly in violation of the SWAPA Constitution and Bylaws.[16] While a serious allegation, if true, we do not think that these facts constitute an actionable violation of the duties embodied in § 501(a). As we have noted earlier, duties under § 501(a) relate primarily to the misuse of union money or property. Furthermore, the scope of the duties of § 501(a) is

---

[15]This claim appears in the Verified Application as claim (n), "failing to disclose material facts related to contract votes."

[16]We again note that the Constitution and Bylaws do not appear in the record before this Court, making our assessment of these claims difficult.

23

also informed by remedies provided for in § 501(b) -- namely, monetary damages, an accounting, or possibly injunctive relief. 29 U.S.C. § 501(b).  Here, not only has Hoffman failed to allege that union money was improperly or improvidently spent in furtherance of the alleged scheme, it is unclear how the claims he asserts are amenable to money damages that would benefit the union as such, an accounting, or any other form of meaningful relief provided under § 501(b).  Further, the defendants are not alleged to have benefitted personally any more than similarly-situated pilots who fared better under the contract -- which apparently was approved by a referendum of the membership. Finally, Hoffman failed to make a showing that the present board's decision not to pursue these claims, based on long-past conduct, was objectively unreasonable.  For these reasons, the district court committed no reversible error in finding that Hoffman lacked good cause to proceed on these claims.

Allegations that important information -- including reports and recommendations from outside consultants, as well as aspects of the offer from Southwest -- was deliberately withheld from the union membership to assure contract approval are serious indeed. But, without more, they do not state a claim of breach of fiduciary duty under § 501(a) that is presently remediable. Therefore, we AFFIRM the district court's denial of Hoffman's application to sue on these claims.

24

# VI

In order to establish good cause, we have today held that a plaintiff must: First, allege misconduct that directly implicates the fiduciary duties enumerated in § 501(a); second, show that the remedies sought would realistically benefit the union and/or the membership of the union; third, plausibly allege facts supporting a conclusion that the breaches of § 501 were presented to the union; fourth, make a showing that the union's refusal to act was objectively unreasonable in the ways we have described; and, finally, convince the court that some evidence exists, disputed or not, that will support the claims of a breach of fiduciary duties under § 501(a). Most of Hoffman's claims fail to meet the first requirement noted above; but it is clear that each of Hoffman's claims fail at least on one or more these several grounds. As such, we find that the district court committed no reversible error in concluding that Hoffman's suit lacked good cause and its denial of Hoffman's application to bring suit against the union is

AFFIRMED.