**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 24-2089**

———————

SANDRA GARDNER,

　　　　　　Plaintiff - Appellant,

　　　v.

INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE
WORKERS; DORA CERVANTES; ROBERT MARTINEZ; MARK BLONDIN;
GARY R. ALLEN; RICKY WALLACE; BRIAN BRYANT; STEVEN GALLOWAY;
RICHARD JOHNSEN,

　　　　　　Defendants – Appellees.

———————

Appeal from the United States District Court for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, Senior District Judge.  (8:24-cv-00454-DKC)

———————

Argued:  May 9, 2025　　　　　　　　　　　　Decided:  August 11, 2025

———————

Before WILKINSON, GREGORY, and RICHARDSON, Circuit Judges.

———————

Reversed and remanded by published opinion.  Judge Gregory wrote the opinion, in which
Judge Richardson joined.  Judge Wilkinson wrote a dissenting opinion.

———————

**ARGUED:**  Steven Paul Schneck, STEVEN SCHNECK, ATTORNEY AT LAW, LLC,
Chicago, Illinois, for Appellant.  Evan Randall Hudson-Plush, COHEN, WEISS AND
SIMON LLP, New York, New York, for Appellees.  **ON BRIEF:**  Thomas H. Geoghegan,
DESPRES, SCHWARTZ, & GEOGHEGAN, LTD., Chicago, Illinois, for Appellant.
Daniel M. Nesbitt, COHEN, WEISS AND SIMON LLP, New York, New York; Jacob
Karabell, BREDHOFF & KAISER PLLC, Washington, D.C., for Appellees.

———————

GREGORY, Circuit Judge:

This case concerns whether Sandra Gardner, as a union member, can sue her union and the union's officers for breach of fiduciary duty under 29 U.S.C. § 501. Unlike most causes of action, union members must satisfy two conditions before bringing a § 501 claim: They must (1) demand that their union take action to correct the alleged wrong (the "demand requirement") and (2) demonstrate that there is "good cause" to bring suit (the "good cause requirement"). 29 U.S.C. § 501(b).

The district court found that Gardner failed to satisfy the demand requirement and therefore could not pursue her case. We disagree. We hold that Gardner properly demanded that her union bring suit, and we therefore reverse and remand for further proceedings. We decline to make any ruling on the good cause requirement and instruct the district court to consider that question in the first instance.

I.

Gardner, a member of the International Association of Machinists ("IAM" or "the union"), filed a verified application for leave to file suit for breach of fiduciary duty under 29 U.S.C. § 501(a)-(b). J.A. 7–14. She sought to sue the union and several of its officers: Dora Cervantes, Robert Martinez, Mark Blondin, Gary Allen, Rickey Wallace, Brian Bryant, Steven Galloway, and Richard Johnsen (collectively, "Defendants"). J.A. 16–17. Gardner claims that Cervantes, the IAM General Secretary-Treasurer ("GST"), routinely misused union funds for personal travel in violation of her fiduciary obligations to the union. J.A. 29–30.

2

Before filing suit, Gardner, along with another union member, sent a letter to the union International President ("IP") and the IAM Executive Council. J.A. 91–92. "Pursuant to 29 U.S.C. § 501 (b)," they "wr[o]te to demand an accounting of the funds misappropriated by IAM[] International President Robert Martinez and IAM[] General Secretary-Treasurer Dora Cervantes and that the IAM[] International President and Grand Lodge bring suit against IP Martinez and GST Cervantes to recover such monies." J.A. 91. They also requested Cervantes' travel reports. *Id.* The letter concluded: "the undersigned request you authorize and take any and all necessary legal action against Dora Cervantes and Robert Martinez to obtain an accounting and restitution of lost funds to the IAM." J.A. 92.

A week later, the IAM General Counsel, Carla M. Siegel, wrote back stating that "IAM intends to conduct an investigation and analysis of your claims." J.A. 94. The union members promptly responded, stating that "[w]e expect more than a cursory audit or superficial investigation." J.A. 96. They also asserted that Siegel had ignored their request "for certain expense records for Martinez and Cervantes." J.A. 96.

Once again, Siegel wrote to the pair, informing them that WithumSmith+Brown, PC ("Withum"), an outside accounting firm, would carry out the investigation. J.A. 101. Siegel provided them with the independent auditor's contact information and stated "[i]t is incumbent on you to provide [the auditor] with all documentation and information you have to assist him in his investigation of your claims." J.A. 101. The union members responded to Siegel, reiterating their request for Cervantes' travel documents. J.A. 103. Siegel, in turn, asked that they provide "more specificity with respect" to their allegations. J.A. 105–06.

3

Gardner, this time joined by two union members, wrote yet again to Siegel. J.A. 108. They "demanded that the IAM International President and Grand Lodge bring suit against IP Martinez and GST Cervantes to recover [the misappropriated union funds]." J.A. 108. They also asked the union to expand the accounting of funds to IAM's General Vice President, Mark Blondin, for records relating to his travel expenses, and for the union to "take any and all necessary legal action against Dora Cervantes, Robert Martinez and Mark Blondin." J.A. 108.

After this latest epistle, Siegel responded to Gardner and the other union member with whom she had sent the original letter. J.A. 113–14. Siegel explained that, in response to their request, "IAM . . . hired . . . [an] independent accounting firm, Withum to investigate your allegations [concerning Cervantez and Martinez]." J.A. 113. "Withum concluded that there was no evidence of wrongdoing, misappropriation or abuse." J.A. 114 (emphasis removed); *see also* J.A. 118–23 (Withum report). Siegel's letter concluded:

> The Executive Council reviewed [Withum's] report and [the union members'] demand. Based on the report, the Executive Council determined that there was simply no support for your unfounded allegations . . . . [T]he IAM has determined there is no basis for taking any further action with respect to your meritless allegations.

J.A. 114.

Despite Siegel and Withum's assertions to the contrary, Gardner claims that "a genuine investigation of [her] claims was never done." J.A. 297. Unsatisfied with the IAM's response, she turned to federal court. Pursuant to 29 U.S.C. § 501(b), she filed the aforementioned Verified Application for leave to file a breach of fiduciary duty claim against Cervantes. J.A. 7–14.

4

As an exhibit to the Verified Application, she attached a Proposed Complaint. J.A. 15–34. In her Proposed Complaint, Gardner outlined two claims. First, she alleged that Cervantes breached her fiduciary duty to the union by misusing union funds for personal travel, in violation of 29 U.S.C. § 501(a) (Count I). J.A. 29–30. Second, she brought a claim for failure to provide requested union financial records under § 201 of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 431(c) (Count II). J.A. 30–32. Both parties and the district court agreed that, pursuant to 29 U.S.C. § 501(b), Gardner needed the court's permission to file Count I but not for Count II. J.A. 13; Proposed Defendants' Preliminary Response to Plaintiff's Application for Leave to File Proposed Complaint Pursuant to 29 U.S.C. § 501 ("Defs. Response to Application") at 2–3, ECF No. 4;[1] J.A. 980 n.2.

In response to Gardner's Application, Defendants stated that Gardner had yet to file her Proposed Complaint and suggested that Gardner do so before the district court decided on whether she could proceed with her § 501 claim. Defs. Response to Application at 2–3. The district court rejected the Defendants' proposal, instead ordering the parties to first brief the question of whether Gardner could proceed on Count I before Gardner filed any complaint. Briefing Order, ECF No. 14.

In a written order, the district court denied Gardner's "verified application for leave to file a complaint pursuant to 29 U.S.C. § 501(b)." J.A. 987. The district court held that Gardner failed to properly demand that the IAM bring suit. As it explained, "[w]hile

---

[1] All ECF citations are to the district court record, *Gardner v. Internat'l. Assoc. of Machinists et al.*, No. 8:24-cv-00454 (D. Md.).

5

Plaintiff disagreed with the accounting conducted by Withum, she has not shown that IAM failed or refused to act on her . . . demand. IAM secured an accounting showing that no other relief was necessary." J.A. 985. Because it found that Gardner failed to satisfy the demand requirement, the district court made no findings as to whether Gardner demonstrated that she had satisfied the good cause requirement. *Id.*

Gardner filed a notice of appeal without any further action from the district court. *See* J.A. 988. She never filed her Proposed Complaint in its entirety or for just the second claim that did not require the court's permission.

## II.

Before considering the merits of this appeal, we must first fulfill our independent obligation of determining whether we have jurisdiction. *Est. of Cunningham v. Mayor of Balt.*, 128 F.4th 238, 242 (4th Cir. 2025); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). As we have oft repeated, "[t]his Court has 'jurisdiction of appeals from all *final decisions* of the district courts of the United States.'" *Est. of Cunningham*, 128 F.4th at 242 (quoting 28 U.S.C. § 1291) (emphasis in *Cunningham*). And, as has become our refrain, "[o]rdinarily, a district court order is not 'final' until it has resolved all claims as to all parties." *Id.* (cleaned up).

This case is peculiar because, at this stage, technically, there are no claims.[2] If Gardner *had* filed her Proposed Complaint, this case would present two claims. J.A. 29–

---

[2] Our duty to ascertain jurisdiction is complicated by the procedural oddities that this case presents. By moving forward without a filed complaint, the district court elected

(Continued)

6

30. The district court only declined to grant Gardner permission to proceed on Count I, J.A. 980 n.2, 987, and therefore, Count II would remain live and unresolved, depriving us of jurisdiction. *See, e.g.*, *Kausler v. Campey*, 989 F.2d 296, 298–99 (8th Cir. 1993) (holding that it lacked jurisdiction to consider an appeal of a district court's finding that the plaintiff lacked good cause to bring a § 501 claim when an additional count remained pending); 22A Fed. Proc., L. Ed. § 52:1239. But that is not what happened. Per the district court's instruction, *see* Briefing Order, ECF No. 14, Gardner never filed her Proposed Complaint and therefore there never were any "live" claims. So, by denying Gardner's application to file her § 501 claim, the district court disposed of all questions before it, rendering the district court's denial of Gardner's application a "final decision" for purposes of § 1291. We, therefore, have jurisdiction.

## III.

Having satisfied ourselves of our jurisdiction, we now turn to the merits of the parties' dispute: whether Gardner may bring her § 501(a) claim. Section 501(a) states that union officials "occupy positions of trust in relation to [their union] and its members as a group," and owe the union a duty "to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies

---

to follow a rather peculiar procedure in this case. Neither of the parties challenged the district court's decision on appeal, so we neither endorse nor condemn its chosen approach. We merely find that, given the district court's procedural decisions, we have jurisdiction over this appeal.

7

adopted thereunder." 29 U.S.C. § 501(a). To enforce § 501(a), federal law creates a limited right of action for union members, but this "right to sue . . . arises only after certain condition precedents have been met." *Cowger v. Rohrbach*, 868 F.2d 1064, 1066 (9th Cir. 1989). Section 501(b) sets forth these condition precedents:

> When any officer . . . of any labor organization is alleged to have violated the duties declared in subsection (a) and the labor organization or its governing board or officers *refuse or fail to sue or recover damages or secure an accounting or other appropriate relief* within a reasonable time after being requested to do so by any member of the labor organization [the demand requirement], such member may sue such officer . . . . No such proceeding shall be brought except *upon leave of the court* obtained upon verified application and *for good cause shown* [the good cause requirement], which application may be made ex parte.

29 U.S.C. § 501(b) (emphasis added).

The Defendants argue that Gardner has not satisfied either of § 501(b)'s two preconditions to suit—the demand and good cause requirements. Gardner argues that she has. We hold that Gardner has satisfied the demand requirement but reserve the question of the good cause requirement for the district court to consider in the first instance.

The demand requirement states that a union member may only sue if "the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time *after being requested to do so* by any member of the labor organization." 29 U.S.C. § 501(b) (emphasis added).

We have yet to consider what constitutes a proper demand but several of our sister circuits have. They agree that § 501(b) is designed to protect two often conflicting interests: those of union members and those of union officials. On the one hand, "the Act

8

is designed to protect union members, who may be of limited education and are rarely represented by counsel when sending letters to their union." *Dinko v. Wall*, 531 F.2d 68, 73 (2d Cir. 1976); *see also Adams-Lundy v. Ass'n of Pro. Flight Attendants*, 844 F.2d 245, 249 (5th Cir. 1988). On the other, Congress put in place § 501(b)'s threshold requirement "to discourage misuse of litigation and to minimize judicial interference in the management of labor organizations." *Hoffman v. Kramer*, 362 F.3d 308, 314 (5th Cir. 2004); *Gould on behalf of St. Louis - Kansas City Carpenters Reg'l Council v. Bond*, 1 F.4th 583, 589 (8th Cir. 2021) ("the purpose of the § 501(b) demand requirement is to afford union leaders an opportunity to exercise their reasonable business judgment.") (cleaned up). Thus, § 501(b) also serves to "'to protect union officials from unjust harassment.'" *Adams-Lundy*, 844 F.2d at 249 (quoting *Dinko*, 531 F.2d at 73).

Courts have cautioned against taking an overly technical reading of the demand requirement. For example, the Second Circuit held that a letter demanding "'a complete accounting' and 'a true and accurate accounting'" satisfies the demand requirement. *Dinko*, 531 F.2d at 72–73. The Third Circuit has also broadly read demand letters. That court held that a union member's letter requesting that the union take specific corrective action to comply with its constitution satisfied the demand requirement. *Sabolsky v. Budzanoski*, 457 F.2d 1245, 1251–53 (3d Cir. 1972). As the court explained, "[t]he letter of request addressed to [the union president], although not a request of the officer to sue, did seek internal relief, and in the circumstances then existing, . . . cannot be deemed insufficient." *Id*. at 1252. Likewise, the Fifth Circuit held that even when a complaint "does not explicitly allege that appellants requested the union to take legal action to correct

9

breaches of fiduciary duties" but does "imply some form of request was made," it satisfies the demand requirement. *Adams-Lundy*, 844 F.2d at 249. We agree that, in evaluating whether the demand requirement is met, courts should not impose any formalistic requirements. Rather, courts should read demands as a whole and in the context in which they were issued. We hold that the demand requirement is satisfied if a reasonable union would be put on notice of what corrective action the union member demands.

Defendants attempt to analogize this case to the Eighth Circuit's decision in *Gould* but, in doing so, they misread the demands. In *Gould*, the would-be plaintiff demanded that their union "take one or more of the following actions": "(1) sue to recover damages; (2) secure an accounting; *and/or* (3) seek other appropriate relief." 1 F.4th at 590 (emphasis added). The union proceeded to "take one" of the suggested actions and secured an accounting but—as permitted by the demand—declined to take any further action. *Id.* Unhappy with the audit report, the union member went to court, demanding that the union sue. *Id.* The Eighth Circuit held that the union member did not satisfy the demand requirement, holding that "an additional request . . . was first required, stating precisely what legal action the Council was now required to take . . . that the accounting had not remedied." *Id.*

But here, unlike the *Gould* disjunctive request (to conduct an accounting "and/or" sue), Gardner's demand is unequivocally in the conjunctive: Gardner wanted "an accounting of the funds . . . *and* . . . [for IAM to] bring suit," J.A. 91 (emphasis added), and "demanded that the IAM International President and Grand Lodge bring suit against . . . Cervantes," J.A. 108. Gardner's letters made clear that she wanted *both* done, not one or

10

the other.  So, by failing to bring suit, the union did not carry out Gardner's demand.  We

hold that Gardner satisfied the demand requirement.

## IV.

Because we find that Gardner satisfied the demand requirement, we reverse the

district court's denial of Gardner's application for leave to file her § 501 claim.  We remand

for further consideration on whether Gardner satisfied the good cause requirement.  The

district court's order is

*REVERSED AND REMANDED.*

WILKINSON, Circuit Judge, dissenting:

I would affirm the denial of Sandra Gardner's application for leave to file her complaint. The record makes perfectly clear that no good cause exists to bring a derivative lawsuit against Dora Cervantes. By opting instead to string this claim along, the majority encourages a spate of sore loser lawsuits from union members upset with bygone elections. Such litigation undermines the ability of a union electorate to choose its leaders and effectively creates a second forum for resuscitating lost races, all to the detriment of union democracy. This runs counter to the Labor-Management Reporting and Disclosure Act's ("LMRDA") "primary objective of ensuring that unions would be democratically governed and responsive to the will of their memberships." *Finnegan v. Leu*, 456 U.S. 431, 436 (1982).

Gardner, for her part, seizes the chance to swat union leaders in the International Association of Machinists ("IAM"). Union officials admittedly are not always the most popular folks in Dodge. And no one is unaware of the history of union corruption. There are plenty of instances where union officials either swindle funds from union treasuries or are otherwise corrupt in ways that would be appalling to the idea of union self-governance. *See, e.g.*, *United States v. Seidman*, 156 F.3d 542, 544 (4th Cir. 1998); *Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365, 367 (1990). No one wants to whitewash union corruption in any way. But that is not what happened here.

This case is, at bottom, an election dispute. Today's allegations against Cervantes were first levied not in a court of law, but in IAM's 2021 officer elections. The union electorate, either unconvinced of her guilt or pleased with her stewardship, reelected

12

Cervantes with more than sixty percent of the vote. Gardner, who supported Cervantes's opponent in the election, now asks a court to do what union voters would not. There is no basis for our doing so.

I.

Section 501(a) of the LMRDA imposes fiduciary duties on union officials to manage the union's funds "solely for the benefit of the organization and its members." 29 U.S.C. § 501(a). If a union official is alleged to have breached her fiduciary duties and the union's governing board "refuse[s] or fail[s] to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after" a member requests it to do so, § 501(b) permits that member to sue the official in federal court "for the benefit of the labor organization." *Id.* § 501(b). But "[n]o such proceeding," the statute continues, "shall be brought except upon leave of the court obtained upon verified application and for good cause shown." *Id.*

This text should immediately give us pause. The statute's preconditions are pretty nearly unique. For a district court to exercise jurisdiction in a typical federal suit, neither of the above preconditions need be met. And nothing about union governance disputes intrinsically involves diverse parties or federal questions. Section 501, then, is a carefully circumscribed extension of federal question jurisdiction and must be "narrowly construe[d]" as such. *Bldg. Material & Dump Truck Drivers, Loc. 420 v. Traweek*, 867 F.2d 500, 506 (9th Cir. 1989) (citation omitted). This reminder bears special emphasis in the context of the LMRDA, considering "the federal policy of noninterference in the internal affairs of unions." *Id.* By giving "full effect" to § 501(b)'s preconditions, we honor

13

the provision's "clear[] design[] to protect union officials from unjust harassment." *Coleman v. Bhd. of Ry. & S.S. Clerks, Freight Handlers, Exp. & Station Emps.*, 340 F.2d 206, 208 (2d Cir. 1965).

Without mentioning these background principles, the majority boils § 501(b) down into two requirements: the member-plaintiff must (1) demand that the union take corrective action and (2) demonstrate "good cause" to bring the lawsuit. According to the majority, the district court misapplied the former and declined to address the latter, warranting remand. Whatever the propriety of this formalistic distinction, it makes no difference here. We "may affirm on any grounds apparent from the record," *United States v. Ali*, 991 F.3d 561, 571 (4th Cir. 2021) (quotation omitted), and the record here makes apparent that Gardner lacks good cause.

## II.

In prolonging this lawsuit, the majority overlooks two ready grounds to end it. First, IAM's response to Gardner's demand was objectively reasonable. Second, Gardner's nearly three-year delay in bringing her lawsuit renders it barred by laches. Both grounds for denying Gardner's application find clear support in the record, and each independently warrants affirming the district court's decision to reject Gardner's request for leave to file her complaint.

## A.

Where a union's response to a member's demand is "objectively reasonable," there can be no good cause to bring suit. *Hoffman v. Kramer*, 362 F.3d 308, 316 (5th Cir. 2004). This standard prevents federal courts from micromanaging internal union grievances as a

14

"super review" board, instead reserving our involvement only upon some demonstration of "impropriety in the [union's] proceedings." *Corea v. Welo*, 937 F.2d 1132, 1143 (6th Cir. 1991). Absent some indication that union officials acted in an unreasonable, arbitrary, or biased manner, they should be able to exercise their "reasonable business judgment" without our interference. *Gould ex rel. St. Louis-Kan. City Carpenters Reg'l Council v. Bond*, 1 F.4th 583, 589 (8th Cir. 2021) (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991)). After all, they are better-informed about their own union's affairs, and any perceived missteps can be hashed out in future elections. *See Hoffman*, 362 F.3d at 317 n.4 (analogizing § 501(b) to shareholder derivative lawsuits).

With this standard in mind, it is clear the union leadership did nothing wrong here. In fact, it did a good deal that was right. When Gardner made her demand, IAM hired an independent accounting firm, WithumSmith+Brown, PC ("Withum"), to investigate her allegations against Cervantes. After Withum completed its investigation, it issued a report concluding there was no evidence that Cervantes misappropriated union funds or abused union resources. J.A. 122–23. In light of Withum's findings, the Executive Council decided, without Cervantes present, not to proceed further. J.A. 42. IAM then sent Gardner a letter detailing Withum's investigation and informed her that it would not be taking any additional steps. J.A. 113–14.

The union's reliance on Withum's independent investigation was an objectively reasonable response to Gardner's demand. There was no reason for IAM to believe Withum was anything but a reputable accounting firm. It is one of the twenty-five largest accounting firms in the United States. And the Withum partner who oversaw the investigation is both

15

a certified public accountant and certified fraud examiner, with over twenty years of experience assisting labor organizations with fraud prevention and investigation. Nor was there any reason for IAM to believe the investigation was a sham. Withum reviewed the documentation Cervantes provided for each of her expense reports. Where more substantiation was needed to verify the business purpose of an expense, Withum sought and reviewed additional corroborating evidence. J.A. 119. That evidence included pictures, invitations, agendas, and the records of other employees. Withum also interviewed Cervantes and conducted independent research online to verify Cervantes's attendance at events. While Withum tried to speak with Gardner several times, it was unable to reach her. J.A. 119, 297–98. Nonetheless, Withum's report addressed and refuted each of Gardner's allegations. J.A. 119–23. The good cause requirement permits unions to reasonably rely on independent assessments, like the one Withum provided here, without having federal courts second-guess their judgment. *See Hoffman*, 362 F.3d at 316–17.

Although Gardner now challenges certain aspects of Withum's investigation, she did not raise any of these concerns with IAM before seeking leave from the district court to bring her action. The primary purpose of § 501 is to give unions, not their individual members, the ability to take corrective action when a union official breaches her fiduciary obligations. *See Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers, AFL-CIO v. Statham*, 97 F.3d 1416, 1421 (11th Cir. 1996). Section 501(b) establishes an exception to this general rule, but only where there is good cause to believe the union's failure to act does not reflect a reasoned business judgment about the best use of union resources. *Hoffman*, 362 F.3d at 316–17.

16

If union members don't indicate what corrective action is needed, then union officials don't have an opportunity to bring their judgment to bear in the first instance. As Judge Chasanow aptly observed, we can only evaluate IAM's response to issues it was made aware of. Because Gardner did not give IAM an opportunity to address any perceived deficiencies in Withum's report, J.A. 985 n.6, she lacks good cause to bring a derivative action under § 501(b), *see Gould*, 1 F.4th at 590.

The concern for union democracy is particularly salient here given that Cervantes's expenses were already brought to the union's attention in the last election by an opposing candidate—one who was supported by Gardner. But Cervantes won reelection anyway. Without more, Gardner's belated criticism of the thoroughness Withum's investigation does not warrant casting aside the views of IAM's membership and the reasoned business judgment of its elected officials.

It is a natural temptation for those who did not back the winning candidate to indulge in payback—if not to overturn the results of the election, then at least to embarrass and harass the winner. But the good cause requirement ensures that § 501(b) does not become an avenue for the indulgence of such desires. Instead, it reserves derivative actions for instances where unions have responded in an objectively unreasonable manner, or not responded altogether, to alleged misconduct. *See, e.g.*, *Cowger v. Rohrbach*, 868 F.2d 1064, 1065, 1068 (9th Cir. 1989) (finding good cause where a union declined to investigate accusation that an official was improperly reimbursing himself); *Brink v. DaLesio*, 453 F. Supp. 272, 275–76 (D. Md. 1978) (finding good cause where a union did not investigate allegations that an official was collecting multiple salaries and was due to receive a quarter

17

of a million dollars in severance). But when unions adequately investigate allegations of misconduct, the proper forum for expressing discontent with union leadership is the next election—not district court.

B.

The majority's refusal to consider Gardner's lack of good cause is especially surprising considering that it enjoyed another route to affirm. Not only did Gardner fail to bring her concerns to IAM, but she also delayed seeking leave to bring her claim in the district court for eighteen months. That delay was compounded by the fact that Gardner did not demand the union take action for over a year after she first learned of Cervantes's allegedly improper travel expenses, totaling nearly three years of delay. While some of Gardner's tardiness can be excused by her husband's illness, that does not explain why she slept on her rights for nearly two years before he took ill. IAM, by contrast, worked with some dispatch. Within a month of receiving Gardner's demand, it hired Withum. The firm then spent the next two months investigating Gardner's allegations. Once Withum issued its report to IAM, the Executive Council promptly decided not to proceed against Cervantes and notified Gardner of the reasoning behind its decision. J.A. 42, 113–14.

Absent a more persuasive justification for her "apparent laggardness," Gardner's lack of vigilance renders her claim untimely under the doctrine of laches. *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990) (quotation omitted); *see also Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 678 (2014) (stating that the "principal application" of laches "was, and remains, to claims of an equitable cast for which the Legislature has provided no fixed time limitation"). Indeed, it would be "difficult" for IAM and Cervantes "to locate

18

witnesses, produce pertinent records, and overcome the effect of dimmed memories" given that the expenses at issue here were incurred between 2015 and 2019. *Riddick v. Balt. Steam Packet Co.*, 374 F.2d 870, 871 (4th Cir. 1967) (per curiam). Because Gardner was not timely in pursuing her claim, she lacks good cause to bring it. *See Horner v. Ferron*, 362 F.2d 224, 229 (9th Cir. 1966).

Rather than apply laches, however, Gardner proposes that we borrow Maryland's statute of limitations for breach of fiduciary duty claims, which the parties agree to be three years. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101. Yet nothing in the statute's text requires such a generous limitations period. True enough, courts often look to analogous state law for a limitations period when federal law is silent. *See, e.g.*, *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 124 (2005) (emphasizing this practice for § 1983 claims). But doing so is inappropriate if it would "frustrate or interfere with the implementation of national policies." *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 367 (1977); *see also Belmora LLC v. Bayer Consumer Care AG*, 987 F.3d 284, 293–94 (4th Cir. 2021) (choosing to apply laches rather than a state statute of limitations because of the equitable character of the claim). That is the case here. Effectuating the democratic governance of unions is a primary objective of the LMRDA. *Finnegan*, 456 U.S. at 436. To permit union democracy to function effectively and prevent the ongoing harassment of officials who have been legitimately elected, we cannot allow disgruntled union members to sit on their rights for years, casting uncertainty over nearly the entirety of a union official's term of office. The very purpose of the good cause requirement is to prevent such "harassing and

19

vexatious litigation" and "unwarranted judicial intrusion[s] in the processes of union democracy." *Cowger*, 868 F.2d at 1068 (citations omitted).

*    *    *

In enacting § 501, Congress certainly had a desire to hold union leadership accountable. But it had no desire to countenance what happened here: sniping at those who won an election fair and square.

Of course, federal law contains all sorts of provisions designed to protect union democracy. *See, e.g.*, 29 C.F.R. § 102.69(a)(8) (permitting objections to electoral conduct within five business days of tallying ballots). And derivative actions under § 501(b) can, in the right setting, do so too. There must be, after all, some outlet to bring misconduct to light when union leadership refuses to do so. But speculative derivative actions, brought after a union's reasonable investigation and without notice to union leadership of the investigation's alleged deficiencies, are not that outlet. Disagreements between Gardner and IAM should have been aired in the electoral arena. And by and large, they were.

By entertaining this derivative lawsuit, the majority extends our jurisdiction beyond what § 501(b) provides. Such an extension both oversteps judicial authority and offers federal courts as a second forum to replay displeasing electoral outcomes. By electing to remand this claim when the record amply justifies its disposition here, the majority prolongs the very uncertainty and harassment that the LMRDA intended to avoid. Because union democracy is best protected when we respect the voices of members and the verdicts of fair elections, I would affirm the district court's denial of Gardner's application for leave to file a verified complaint.

20